JAMES A. SHANAHAN AND CONSTANCE M. SHANAHAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1090-73.    Filed October 15, 1974.

*Daniel J. Clinton,* for the petitioners.
*Melvern Stein,* for the respondent.

OPINION

IRWIN, *Judge:* Respondent determined a deficiency of $250 in petitioners' 1971 income tax. The only question remaining for decision is whether petitioners received compensation for a casualty loss within the meaning of section 165(a).[1]

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

All of the facts of this case have been stipulated and are so found.

James A. and Constance M. Shanahan, husband and wife, filed a joint Federal income tax return for the year 1971. At the time of the filing of the petition herein they resided in Sepulveda, Calif. Hereinafter the Shanahans will be referred to as petitioners.

Petitioners' home was damaged on February 9, 1971, as the result of an earthquake. On May 14, 1971, they applied to the Small Business Administration (SBA) for an unsecured disaster loan in the amount of $1,600 and it was subsequently authorized on May 30, 1971. Under the terms of the authorization and pursuant to the Disaster Relief Act of 1970, $1,100 of the loan obligation was canceled during 1971.[2]

Petitioners claimed a casualty loss deduction in the amount of $2,618 on their 1971 Federal income tax return. That amount represented the damage to petitioners' house less the required $100 exclusion. Respondent reduced the claimed loss in an amount equal to the sum forgiven by the SBA.

The issue herein centers on the question of whether petitioners were compensated for a portion of their loss within the meaning of section 165(a)[3] so as to require a reduction in the amount of their claimed casualty loss.

Petitioners maintain that they were not compensated by the cancellation of indebtedness because it was a gift. Respondent has stated, in prior revenue rulings, that the Government is capable of making a gift[4] and that a gift to disaster victims by relatives is not considered as compensation for purposes of section 165.[5]

Respondent relies on Rev. Rul. 71-160, 1971-1 C.B. 75,[6] which takes the position that the forgiveness of indebtedness provisions

---

[2] The authorization for petitioners' loan contained the statement that "Pursuant to the Disaster Relief Act of 1970, $1,100 of this loan will be cancelled and this amount has been considered in computing monthly payments."

[3] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

[4] Rev. Rul. 55-609, 1955-2 C.B. 34; Rev. Rul. 57-233, 1957-1 C.B. 60.

[5] Rev. Rul. 64-329, 1964-2 C.B.58.

[6] The revenue ruling considered the question of whether the cancellation of indebtedness is compensation in the context of a fact situation where a taxpayer suffered a casualty loss and received an SBA loan in 1968 which was partially forgiven in 1969 after passage of the 1969 Disaster Relief Act. Consequently, the specific issue considered was whether the taxpayer should reduce the amount of his casualty loss for 1968 or report the cancellation as income in 1969. Cf. Herman E. Londagin, 61 T.C. 117 (1973).

of the Disaster Relief Acts of 1969 and 1970 are similar to insurance and that "the purpose of these provisions is to compensate disaster victims for certain property losses," thus concluding "that the portions of the debts cancelled under the Act are 'compensation' within the meaning of section 165(a) of the Code."

Under the rule of ejusdem generis the general words "other compensation" are to be construed in a manner consistent with the specific meaning of the word "insurance"; thus, if the forgiveness of indebtedness was similar to insurance, as respondent contends, it will come within the meaning of "other compensation." Cf. *Fred J. Hughes,* 1 B.T.A. 944 (1925); *John P. White,* 48 T.C. 430 (1967). Consequently, the outcome of the present case depends on whether the cancellation of indebtedness was more in the nature of a gift or insurance.

Petitioner contends that the SBA and Federal Government were not obliged to compensate them for their property loss and that the lack of an obligation indicates that a gift was intended. We have noted, however, that the "mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift." *Commissioner v. Duberstein,* 363 U.S. 278, 285 (1960); *Old Colony Tr. Co. v. Commissioner,* 279 U.S. 716 (1929). Instead the test to be applied in determining if a gift was made, for purposes of the law of taxation, is whether the debt was canceled due to a "detached and disinterested generosity [or] out of affection, respect, admiration, charity or [other] like impulses." *Commissioner v. Duberstein, supra.*

In *Kroon v. United States,* F.Supp. (D. Alaska 1974), the taxpayers' residence was destroyed by an earthquake in 1964 and they filed an amended Federal income tax return for 1963 in which they claimed a casualty loss deduction in the amount of $54,800. The taxpayers obtained loans, guaranteed by the SBA, for the purpose of refinancing the mortgages on the destroyed residence. They then applied to the Alaska Mortgage Adjustment Agency for assistance and that agency made payments in 1968 which were applied against the taxpayers' mortgage obligations. The taxpayers contended that the payments were gifts and need not be reported in income. In denying the taxpayers' claim the court stated as follows:

The court discerns the payment in controversy arose more out of some form of obligation and interest than out of charity and disinterested generosity. * * * in

this instance the government owes a type of duty not incumbent upon a private donor to relieve hardship caused by a natural disaster. Alternatively, it may be contended that the government benefits more than a private donor in these situations in that a stronger economy increases the tax base.[7]

The concern and sense of obligation, on the part of Government, toward disaster victims is exemplified by the legislative history of the 1969 Disaster Relief Act. S.Rept. No. 91-280, to accompany S. 1685 (Pub. L. 91-79),[8] states as follows:

Major disasters, when they occur, also wreak serious harm to private individuals and deprive them of the ability to provide themselves with the basic necessities of life—food, clothing, and shelter. Without emergency assistance to enable people so stripped of the means for survival to reestablish their place in the community within a reasonable time and under satisfactory conditions, the entire community will be seriously impeded in its recovery from the impact of a major disaster. [Report of Senate Public Works Committee, 91st Cong., 1st Sess., 1 U.S. Code Cong. & Adm. News 1135 (1969).]

42 U.S.C. sec. 4401(a) states the following:

(a) The Congress hereby finds and declares that—
(1) because loss of life, human suffering, loss of income, and property loss and damage result from major disasters such as hurricanes, tornadoes, storms, floods, high waters, wind-driven waters, tidal waves, earthquakes, droughts, fires, and other catastrophes; and
(2) because such disasters disrupt the normal functioning of government and the community, and adversely affect individual persons and families with great severity; special measures, designed to assist the efforts of the affected States in expediting the rendering of aid, assistance, and emergency welfare services, and the reconstruction and rehabilitation of devastated areas, are necessary.

In our view the aid which petitioners received was more in the nature of insurance. The general purpose of insurance is to spread the risk of loss from "any of the innumerable perils that beset the person who is active under the conditions of modern life among a large number of those who are exposed to similar perils." Vance, Insurance 4 (3d ed. 1951).

Prior to 1966, it was the customary practice of Congress to enact special legislation granting relief for specific disasters.

The specific disaster-by-disaster legislation approach was uncertain and characterized by great delay and much variation in treatment of the different stricken areas.

Investigation disclosed further that, while fairly adequate help for damages incurred by governmental agencies and operations had been authorized by

---

[7] Compare *Herman E. Londagin,* 61 T.C. 117 (1973).

[8] The House bill was passed in lieu of the Senate bill after substituting for its language much of the text of the Senate bill.

national disaster legislation, comparatively little basic assistance had been made available to private individuals. * * *
  * * *
  In an attempt to rectify this deficiency, more than 40 Senators joined on April 30, 1965, in introducing S. 1861, a bill proposing several major revisions in the basic disaster relief law. * * * [1 U.S. Code Cong. & Adm. News 1136 (1969).]

That bill was unanimously adopted by the Senate and passed the House in an amended version. The Senate concurred in the amendments and the bill was signed by the President on November 6, 1966. One of the provisions deleted in the House version pertained to disaster loans to homeowners and small businesses. 1 U.S. Code Cong. & Adm. News 1136-1137 (1969).

S. 1685 (Pub. L. 91-79, 115 Cong. Rec. 7645 (Part 6) (1969)), was introduced to remedy existing deficiencies in disaster relief. Section 3 of that bill authorized the SBA to make loans to homeowners in specific amounts without regard to the availability of financial assistance from private sources.

H.R. 6508 (Pub. L. 91-79, 115 Cong. Rec. 18805 (Part 14) (1969)) was a bill to provide specific assistance to the State of California for the reconstruction of areas damaged by storms, floods, landslides, and high water during December 1968 and January and February 1969. 115 Cong. Rec. 18805 (Part 14)(1969). Section 6 of that bill applied to SBA loans granted as a result of the California disaster. Under that provision the SBA was required to cancel up to $1,800 of interest, principal, or any combination thereof on that part of any loan in excess of $500 at the borrower's option. The two bills were sent to conference for reconciliation of the differing provisions. The conference substitute adopted the loan cancellation provisions of the House bill. Section 6 of the 1969 Disaster Relief Act (Pub. L. 91-79) provided as follows:

Sec. 6. In the administration of the disaster loan program under section 7(b)(1) of the Small Business Act, as amended (15 U.S.C. 636(b)), in the case of property loss or damage in any affected State resulting from a major disaster the Small Business Administration—

(1) *to the extent such loss or damage is not compensated for by insurance or otherwise, (A) shall at the borrower's option on that part of any loan in excess of $500 cancel (i) the interest due on the loan,* or (ii) the principal of the loan, or (iii) any combination of such interest or principal except that the total amount so canceled shall not exceed $1,800, * * * [Emphasis supplied.]

The 1970 Disaster Relief Act contained similar provisions to the 1969 Act, but raised the cancellation of indebtedness level to $2,500.

In our view the foregoing indicates a clear intent on the part of Congress to provide for a limited but uniform means of spreading the risk of disaster losses throughout the population of the United States. The assistance provided was to be used in assisting disaster victims to reconstruct and rehabilitate damaged property. The loan cancellation provision was exercisable "to the extent such loss or damage is not compensated for by insurance or otherwise." Under the 1970 Act the petitioners had a right to have a portion of their indebtedness canceled and this was in fact done. Thus, the cancellation of indebtedness was compensation within the meaning of section 165(a).

This result is consistent with the purpose of section 165(a). That section allows a deduction for disaster losses suffered by taxpayers. In arriving at the amount of the deduction a taxpayer must "net" any compensation received to determine the loss actually suffered. *Ray Durden,* 3 T.C. 1 (1944). Because petitioners received compensation of $1,100 they must reduce the amount of their loss accordingly.

*Decision will be entered for the respondent.*