**GEORGE FREITAS DAIRY, INC.,**
Plaintiff-Appellee,

v.

**The UNITED STATES of America,**
Defendant-Appellant.

**HENRY COSTA, JR. DAIRY, INC.,**
Plaintiff-Appellee,

v.

**The UNITED STATES of America,**
Defendant-Appellant.

Nos. 76–2928, 76–2929.

United States Court of Appeals,
Ninth Circuit.

Sept. 21, 1978.

**J. BLAINE ANDERSON, Circuit Judge:**

George Freitas Dairy, Inc. and Henry Costa, Jr. Dairy, Inc. ("taxpayers") prevailed below in these tax refund actions. The district court found that taxpayers had sustained deductible losses under I.R.C. § 165(a), 26 U.S.C., when their production quotas were cancelled in 1967.

The primary issue on appeal is whether taxpayers were compensated for their losses by legislative action taken the same year. We cannot agree with appellant's conclusion that this was compensatory legislation and affirm the district court.

## FACTS

In Hawaii prior to 1967, a balance between supply and demand for wholesale milk was maintained through production quotas whereby producers, such as taxpayers, enjoyed the right to sell a certain amount of milk to processors at a premium. These production contracts were freely traded among producers.

Demand for milk declined in 1966. Dissatisfaction with the quota arrangements arose among the producers; a series of disputes with the processors followed. In February 1967 the producers decided to cancel the contracts, and eventually the processors acquiesced.

The producers were unable to formulate an acceptable substitute marketing system. The producers began to fight among themselves. The resulting imbalance between supply and demand threatened the continued vitality of the industry.

Public officials became concerned, and the State Legislature passed the "Milk Control Act" on June 7, 1967. The legislative solution provided for quotas based on average production over the preceding three years. Both appellees received quotas substantially larger than their previous quotas.

## ANALYSIS

■ I.R.C. § 165(a) provides:

(a) *General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance of otherwise.

Gilbert E. Andrews, Atty., Dept. of Justice, Washington, D. C., for defendant-appellant.

William W. Saunders (argued), Honolulu, Hawaii, Gary R. Allen, Atty. (argued), Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before CHAMBERS, WALLACE, and ANDERSON, Circuit Judges.

It is clear that each taxpayer sustained a loss when the private quota system was abandoned. The record amply supports the district court's finding that the quotas had become worthless. *Cf. Textron, Inc. v. United States*, 561 F.2d 1023 (1st Cir. 1977) (unmarketable corporate shell's potential use is not value under I.R.C. § 165(a)); *Yates Motor Co., Inc. v. CIR*, 561 F.2d 15 (6th Cir. 1977) (building constructed for specific purpose worthless when business relocated). The processors' acceptance of the cancellation was the identifiable event that evidenced a closed and completed transaction within the taxable year.[1] See Treas. Reg. § 1.165–1(d)(1) (1964).

Appellant's primary contention is that taxpayers were compensated for this loss later that year when the Milk Control Act was passed. We disagree. Legislative action can constitute compensation for a loss otherwise deductible,[2] but here the legislation was not primarily compensatory in purpose or effect.

■ The State-administered quotas are neither based on nor equivalent to the private quotas. The State may reduce or cancel the new quotas at any time; thus, taxpayers do not have a vested property interest in the continuation of the quota system. *See Hudspeth v. United States*, 519 F.2d 1055 (5th Cir. 1975); *Consolidated Freight Lines, Inc. v. Comm'r*, 101 F.2d 813 (9th Cir. 1939), *cert. denied*, 308 U.S. 562, 60 S.Ct. 73, 84 L.Ed. 472 (1939).[3]

■ The "Milk Control Act" is a comprehensive regulatory statute, unlike statutes designed to grant relief to disaster victims. The legislature's "Findings and Declaration of Necessity" (Act 260, § 2, Session Laws of Hawaii (1967)) does not evidence a compensatory purpose, but a concern for the welfare of consumers and the dairy industry generally. A quota system was included in the Act "[t]o promote a proper balance be-

tween supply and demand for milk." 3 Haw.Rev.Stat. § 157–34. In the absence of a compensatory purpose or effect, we cannot conclude that taxpayers' losses have been "compensated for by insurance or otherwise." *See Boston Elevated R. R. v. CIR*, 16 T.C. 1084, 1112 (1951), *aff'd* 196 F.2d 923 (loss uncompensated when "statute did not undertake to compensate petitioner for any particular loss"); *cf. Shanahan v. CIR*, 63 T.C. 21, 23 (1974) ("general words 'other compensation' are to be construed in a manner consistent with the specific meaning of the word 'insurance' ").

■ A deduction cannot be denied simply because the loss may not be wholly disadvantageous to the taxpayer. *See Feldman v. Wood*, 335 F.2d 264, 266 (9th Cir. 1964). As the district judge found, this was not a sham transaction acted out for tax purposes. See *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

■ Appellant's alternate contention is that cancellation of the private quotas followed by enactment of the State quotas constituted a "like kind exchange" and therefore recognition of the loss is deferred under I.R.C. § 1031(a). Appellant argues that "taxpayers cancelled their milk quota contracts in expectation that legislation could rectify the abuses present in the contract quota arrangement." The findings of fact contradict appellant's argument:

> "At the time these fixed events occurred, taxpayers could not have anticipated that legislation would eventually be passed, or that they would be conferred production quotas by the state." R. 92.

In *Forward Communications Corp. v. United States*, 42 Am.Fed.Tax R.2d 5334 (Ct.Cl., June 30, 1978), cited to us by appellant, the taxpayer's relinquishment of one contract was contingent upon acquisition of another contract. Here, taxpayers' cancellation and

---

1. Whether both taxpayers were calendar year taxpayers is unclear. Inasmuch as we conclude that no compensation was received by either taxpayer, we need not resolve this question.

2. *E. g., Shanahan v. CIR*, 63 T.C. 21 (1974).

3. We do not, of course, address the issue of what tax consequences, if any, will occur if and when appellees dispose of whatever quota rights they may have under the statutory system.

the legislature's action were "not a part of the same exchange." *Id.* at 5347.

We are satisfied that the district court properly computed the amount of the refund due. The judgments are AFFIRMED.