ESTATE OF LOUISE D. BRYAN, DECEASED, CORINNE BRYAN
MITSAK, PERSONAL REPRESENTATIVE, PETITIONER v.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2505–78.     Filed July 21, 1980.

*Albert S. Barr III, Earl S. Wellschlager,* and *Edward S.
Smith,* for the petitioner.
*Charles B. Zuravin,* for the respondent.

OPINION

WILBUR, *Judge:* Respondent determined a deficiency in dece-
dent's Federal estate tax return in the amount of $15,712.80. The
sole issue for decision is whether $60,000 received from the
Client's Security Trust Fund for the Bar of Maryland is
compensation "by insurance or otherwise" within the meaning
of section 2054[1] so as to reduce the amount of theft loss
deductible from the gross estate due to embezzlement.

This case was submitted without trial pursuant to Rule 122,
Tax Court Rules of Practice and Procedure. The stipulation of
facts and the attached exhibits are incorporated herein by this
reference. A summary of the pertinent facts is set forth below.

Louise Dail Bryan (the decedent) died intestate on October 14,
1973. Her sister, Corinne Bryan Mitsak, the petitioner herein,
was appointed personal representative of the decedent's estate.
Petitioner retained an attorney, Mr. Levine, to represent her in
the administration of the estate. Mr. Levine properly collected
insurance proceeds on the decedent's life. However, instead of
keeping the proceeds of the insurance policies for the intended
beneficiary, decedent's mother, he wrongfully appropriated the
funds to his own use. In addition, he retained for his own use
large sums of money from the probate estate. Of the total

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect for the tax year
in issue, unless otherwise indicated.

$158,000 embezzled, $65,025.74 was recovered from Mr. Levine. The recovery of these sums reduced the amount of theft loss to $92,974.26. The parties agree that no further recovery is forthcoming from Mr. Levine who was convicted of mail fraud in 1976 and subsequently disbarred.

A Federal estate tax return was filed on January 10, 1975. Mr. Levine had been removed as counsel in December 1974, and of the $65,000 recovered from Mr. Levine, $30,000 was recovered by the date the return was filed. The subsequent partial restitution (approximately $35,000) by Mr. Levine has increased the amount of estate tax payable. To this, both parties agree. What remains in dispute is whether $60,000 received from the Client's Security Trust Fund for the Bar of Maryland (hereafter the fund) can be considered compensation "by insurance or otherwise" so as to further reduce the amount of deductible theft loss.

In September 1975, a request was made to the fund for payment of the unrecovered amounts embezzled by Mr. Levine. The fund was created under the provisions of article 10, section 43(b)(1) of the Annotated Code of Maryland (Mitchie 1976) –

for the purposes of maintaining the integrity and protecting the good name of the legal profession by reimbursing, to the extent deemed proper and reasonable by the trustees, losses caused by defalcations of members of the bar of the State of Maryland, acting either as attorneys or as fiduciaries (except to the extent to which they are bonded);

The fund is maintained through annual contributions required of all practicing attorneys in Maryland. Md. Ann. Code art. 10, sec. 43(c) (Mitchie 1976); Rule 1228(f), Maryland Rules of Procedure. Rule 1228 governs the operation and administration of the fund. Before a claimant may recover, the fund requires that all legal remedies be exhausted.

The trustees of the fund determined that petitioner's request for payment should be partly granted, and issued her a check in the amount of $60,000 in December 1976. Respondent concluded that the reimbursement reduced the theft loss deduction available and assessed a $15,712.80 deficiency, which petitioner contests.

The issue for decision is whether the payment from the fund constitutes compensation "by insurance or otherwise" under

section 2054.[2] Petitioner argues that the payment falls outside the scope of section 2054, and, therefore, the amount of theft loss deduction should not be reduced. It is respondent's position that the fund payment is compensation within the meaning of section 2054. We agree with respondent.

Section 2054 grants a deduction for "losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise." The regulation promulgated pursuant to this section provides no guidance as to the term "insurance or otherwise," nor is there any definitive case law. Sec. 20.2054–1, Estate Tax Regs. Both parties agree that section 165, the income tax counterpart to section 2054, which contains the same "insurance or otherwise" language, is applicable by analogy, and both petitioner and respondent base their arguments on case law interpreting section 165. We agree with this approach.

The purpose of the casualty and theft loss deduction from the gross estate provided by section 2054 is to recompense the estate for unrecovered losses suffered through no one's fault, or through the dishonesty of a third party. Allowance of a deduction helps to lighten the burden. To the extent the loss is compensated for by insurance or otherwise, the loss is extinguished and no deduction is permitted, for the amount recovered is returned to the estate and is available for distribution to the beneficiaries.

The "insurance or otherwise" language in general indicates that the type of compensation received must be such that it was structured to replace what was lost. The burden of proof lies with the petitioner to establish her right to the deduction.

We believe that the payment constituted compensation "by insurance or otherwise" for the loss incurred. Using the principle ejusdem generis, the general words "or otherwise" must be construed consistently with the specific term "insurance." If the

---

[2]Sec. 2054 provides:

SEC. 2054. LOSSES.

For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise.

payment was similar to insurance, it falls within the meaning of the statute. *Shanahan v. Commissioner*, 63 T.C. 21 (1974).[3]

Petitioner bases her argument that the payment was not similar to insurance on three factors: (1) The fund is not recognized as an insurer with the State of Maryland, (2) potential beneficiaries have no right to payment, and (3) the risk of loss is spread among those who may cause the losses, rather than among those who may suffer the losses. We find these arguments unpersuasive.

First, petitioner cites Maryland Attorney General Opinions to the effect that the fund is not an insurer. What may not be insurance for purposes of certain State laws may be considered to be in the *nature of insurance* for Federal tax purposes. Merely because the fund is not subject to regulation, licensing restrictions, and the like, as are regular insurance companies, is not determinative that the fund is not, for purposes of section 2054, similar to insurance.

Second, petitioner contends that because there is no right to payment, the payment cannot be considered to be insurance. This Court has previously held that absence of a legal or moral obligation to make a payment does not prevent characterization of the payment as in the nature of insurance. *Shanahan v. Commissioner, supra.*

Finally, petitioner argues that since the risk of loss is spread among those who may cause the loss rather than among those who may suffer the loss, the payment cannot be characterized as insurance. It is true that contracts of insurance distribute the loss among those who are subject to the loss upon payment of insurance premiums. W. Vance, Insurance 4, 5 (3d ed. 1951). But this does not mean the payments before us are not in the nature of insurance. The fund is similar to insurance in that it spreads

---

[3] In *Shanahan v. Commissioner*, 63 T.C. 21 (1974), because of the contentions of the parties, the Court extensively discussed whether the cancellation of indebtedness at issue in that case was a gift. Petitioner herein does not claim that the fund payment constituted a gift, just that the payment was not "insurance or otherwise." And, in any event, it is clear that the fund reimbursement herein cannot be characterized as a gift. It was not made out of a detached and disinterested generosity or out of respect, admiration, charity, or the like. *Commissioner v. Duberstein*, 363 U.S. 278 (1960). Rather, fund payments are made out of a sense of obligation to uphold the public's faith in lawyers and to protect the good name of the bar. Md. Ann. Code art. 10, sec. 43 (Mitchie 1976). Payments arising out of some form of obligation and interest are not gifts. *Kroon v. United States*, an unreported case (D. Alaska 1974, 34 AFTR 2d 5531, 74-2 USTC par. 9641).

the risk of loss of the good name of the bar among those who have an interest in maintaining it. Members of the bar suffer loss of integrity and esteem in the public eye whenever the occasional scoundrel in their midst breaches his duty to his client. Through reimbursements, where appropriate, to defrauded clients, the member attorneys hope to insure their reputations and improve their public image. The costs of a breach of fiduciary duty by one attorney are borne by all those in practice rather than visited on the innocent client in a specific instance.

Alternatively, the fund may be analogized to a fidelity bond arrangement. Each attorney in Maryland must pay $20 per year into the fund as a condition precedent to employment (the right to practice). Md. Ann. Code art. 10, sec. 43(c) (Mitchie 1976); Rule 1228, Maryland Rules of Procedure. Losses caused by the employee (attorney) to the employer (client) are reimbursed by the insurer (fund). Of course, neither of the above analogies is perfect; however, both are helpful to show that fund operations are in the nature of insurance. After careful consideration of the facts, it is our view that the payment in question can be so classified.

We also find guidance in our prior holding in *Shanahan v. Commissioner*, 63 T.C. 21 (1974). There, petitioners received an unsecured loan from the Small Business Administration after their house was damaged by an earthquake. A portion of the loan was canceled pursuant to the Disaster Relief Act of 1970. The Court held that the cancellation of indebtedness was not a gift, but rather was more in the nature of insurance. The act was passed to help remedy existing deficiencies in disaster relief to the extent such loss or damage is not compensated by insurance. It followed that petitioners had to "net" any compensation received to determine the loss actually suffered. *Shanahan v. Commissioner*, supra; see also *Durden v. Commissioner*, 3 T.C. 1 (1944).

Similarly, petitioner here must "net" the compensation received to determine the theft loss actually suffered. We hold that petitioner has failed to prove that the fund payment was not in the nature of insurance. The fund payment was clearly an attempt to put back into the beneficiaries' pockets what had been taken out by the embezzling attorney. Had the sums involved not been stolen in the first place, they would have been included as part of the gross estate for tax purposes. Petitioner

has been reimbursed in part for the loss suffered, yet wants to receive a double benefit by escaping taxation on the amount recovered. She cannot do indirectly what is not permitted directly. Accordingly, the allowable theft loss deduction will be reduced by $60,000, the amount of reimbursement received from the fund.

*Decision will be entered for the respondent.*