PAUL J. AND THELMA E. SMITH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1043–76.     Filed March 26, 1981.

*Robert M. Tyle*, for the petitioners.
*William S. Miller*, for the respondent.

DAWSON, *Judge*: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

FALK, *Special Trial Judge*: Respondent determined deficiencies of $481.20, $746, $368.49, and $715.23, respectively, in petitioners' 1969, 1970, 1971, and 1972 Federal income taxes. We must determine the amount of a casualty loss deductible under section 165 suffered by petitioners and whether, on account thereof, petitioners are entitled to a net operating loss deduction under section 172 for 1969, 1970, and 1971 (and, if so, the amount thereof). Further, if we shall determine that the amount of petitioners' casualty loss and business deductions allowable for 1972 do not exceed their gross income for that year, we must also decide whether petitioners are entitled to deductions for 1972 under section 164 in excess of the amount thereof allowed by respondent for gasoline taxes paid, and under section 163 for interest expenses in excess of the amount conceded by respondent.[3]

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found. The stipulation of facts and supplemental stipulation of

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure, the post-trial procedures set forth in that Rule are not applicable to this case.

[3] Respondent, on brief, concedes $640.46 of deductible interest expenses for 1972.

facts and exhibits attached thereto are incorporated herein by reference.

Petitioners filed their joint 1969, 1970, 1971, and 1972 Federal income tax returns with the Internal Revenue Service Center at Andover, Mass. At the time the petition herein was filed, they resided at Painted Post, N.Y.

## Issue 1. Casualty Loss

In 1960, petitioners purchased a two story, three bedroom residence in Painted Post, N.Y. Prior to the events hereinafter described, they made extensive capital improvements to the property. There was a detached garage, a swimming pool, and a fenced yard on the property. Since its purchase, it was continuously used as a residence by petitioners.

In June of 1972, hurricane Agnes struck the area. Flood waters rose to approximately 12 feet in the area of petitioners' home and completely destroyed petitioners' real property except for whatever salvage and land values remained. Petitioners made no attempt to repair or restore the real property after the flood.

As a result of the flood, areas of New York, including the village of Painted Post, were declared natural disaster areas by the President of the United States and became eligible for Federal financial assistance. Thereafter, the Urban Development Corporation, an agency and political subdivision of the State of New York, was designated to act as the urban renewal agency for the village of Painted Post, there having previously been no urban renewal agency in existence there. On December 12, 1972, petitioners' real property was acquired for $18,000 by the Urban Development Corporation pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub. L. 91–646, 84 Stat. 1894 (1971), 42 U.S.C. 4601 (1976) (commonly referred to as the Relocation Act), and regulations and guidelines promulgated thereunder. The funds to purchase real property in Painted Post from persons, including petitioners, whose property was damaged by the flooding caused by hurricane Agnes were provided by the Federal Government through financial grants made to the Urban Development Corporation by the Department of Housing and Urban Development (HUD). The payment of $18,000 was equal to the fair market value of petitioners' real property immediate-

ly before the flood, with the sole exception of the value of petitioners' detached garage. The garage had a fair market value of $500 immediately before the flood and was worthless immediately thereafter. The property had an adjusted basis in petitioners' hands in excess of $500.

On their joint 1972 Federal income tax return, petitioners claimed a casualty loss deduction under section 165 in the amount of $30,016.83. They applied $7,345.02 against their income for 1972 and carried back the balance to 1969, 1970, and 1971. In his notice of deficiency, respondent disallowed the entire $30,016.83 claimed casualty loss deduction for lack of substantiation. The parties now agree that petitioners suffered a $7,618.80 loss of personal property in the flood. Petitioners concede that the amount of the casualty loss as finally determined should be reduced by $1,000, the amount by which repayment was forgiven of a loan to petitioners from the Small Business Administration.

### Issue 2. Gasoline Tax and Interest Deductions

Petitioners owned two automobiles in 1972. They typically drove a total of 21,000 to 25,000 miles a year. They kept no records of the number of miles they drove in 1972, but believe it was within that average range. On Schedule C of their 1972 return, petitioners claimed a deduction for business travel by private automobile based upon 19,717 miles of business use, which deduction respondent allowed. Respondent also allowed an itemized deduction for 1972 for gasoline taxes paid based upon 12,000 miles of nonbusiness driving in lieu of a greater amount claimed by petitioners.

Petitioners claimed an interest deduction of $683.40 for 1972. Respondent disallowed the deduction in its entirety for lack of substantiation. At trial, petitioners offered no documentary evidence of their interest expenses. The record in the case was held open to receive such documentation after the hearing, and documents reflecting interest payments in 1972 in the aggregate amount of $640.46 were subsequently received by the Court. On brief, respondent concedes that amount.

### OPINION

### Issue 1. Casualty Loss

Section 165 permits individuals to deduct losses suffered upon the damage to or destruction of nonbusiness property by reason

of fire, storm, shipwreck, or other casualty, or from theft to the extent that the amount of each such loss not compensated for by insurance or otherwise exceeds $100. See sec. 165(a) and (c)(3).

The major issue for decision is whether the payment to petitioners by the Urban Development Corporation constitutes compensation "by insurance or otherwise" for their loss under section 165(a). Petitioners argue that the payment falls outside the scope of section 165(a) and, therefore, the amount of the casualty loss deduction should not be reduced. It is respondent's position that the payment is such compensation within the meaning of section 165(a). We agree with respondent.

"The 'insurance or otherwise' language in general indicates that the type of compensation received must be such that it was structured to replace what was lost. The burden of proof lies with the * * * [petitioners] to establish * * * [their] right to the deduction." *Estate of Bryan v. Commissioner*, 74 T.C. 725, 727 (1980).

We believe that the payment of an amount roughly equivalent to the value of petitioners' real property immediately before the flood, made by a public agency designated to help relieve the financial losses caused by the natural disaster in the area of petitioners' property, was in the nature of insurance. The payment seems clearly to have been an attempt to put back into petitioners' pockets what had been destroyed by the flood and solely on account of their loss caused by the flood. In any event, petitioners have not shown that that is not the case. See *Estate of Bryan v. Commissioner, supra; Shanahan v. Commissioner*, 63 T.C. 21 (1974). We hold, therefore, that the amount of petitioners' loss must be reduced by $18,000, the amount paid for the property by the Urban Development Corporation. Petitioners are entitled to a casualty loss deduction based upon the loss of their personal property in the amount agreed upon by the parties and $500 for the value of their garage, less the amount ($1,000) of the SBA loan forgiveness and the $100 limitation of section 165(c)(3).

*Issue 2. Gasoline Tax and Interest Deductions*

Petitioners offered no evidence of their entitlement to a deduction in excess of the amount allowed by respondent for gasoline taxes paid nor of a deduction for interest paid in excess

of the amount now conceded by respondent, and we hold that they are to be allowed only in those amounts. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933).

---

In accordance with the foregoing,

*Decision will be entered under Rule 155.*

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure, the post-trial procedures set forth in that Rule are not applicable to this case.