WILLIAM M. AND SHEILA R. SPAK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1865–76.    Filed March 26, 1981.

*Robert M. Tyle,* for the petitioners.
*William J. Neild,* for the respondent.

DAWSON, *Judge*: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

FALK, *Special Trial Judge*: Respondent determined deficiencies of $2,144.08 and $82.15, respectively, in petitioners' 1969 and

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2]Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure, the post-trial procedures set forth in that Rule are not applicable to this case.

1970 Federal income taxes. By amendment to his answer, filed by leave of the Court following trial to conform the pleadings to the proof, respondent seeks to increase the deficiency for 1969 to $2,200.23. We must determine the amount of a casualty loss deductible under section 165 suffered by petitioners and whether, on account thereof, petitioners are entitled to a net operating loss deduction under section 172 for 1969 and 1970 (and, if so, the amount thereof).

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found. The stipulation of facts and supplemental stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Petitioners filed their joint 1969, 1970, and 1972 Federal income tax returns with the Internal Revenue Service Center at Andover, Mass. At the time the petition herein was filed, they resided at Elmira, N.Y.

In 1964, petitioners purchased a two story, three bedroom home in Elmira, N.Y., for $10,000. They paid $400 in closing costs upon the purchase and, prior to the events hereinafter described, they made extensive capital improvements to the property which cost them approximately $7,000. Since its purchase, it was continuously used as a residence by petitioners.

In June of 1972, hurricane Agnes struck the area. Flood waters rose to a depth of approximately 3 feet on the first floor of petitioners' home and did extensive damage to petitioners' real and personal property. Petitioners made no attempt to repair or restore the real property after the flood. Petitioners' home had a fair market value of $17,000 immediately before the flood and $7,000 immediately thereafter.

As a result of the flood, areas of New York, including Elmira, were declared natural disaster areas by the President of the United States and became eligible for Federal financial assistance. On August 10, 1972, petitioners' real property was acquired for $13,000 by the Corning Urban Renewal Agency pursuant to subchapter III of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub. L. 91–646, 84 Stat. 1904 (1971), 42 U.S.C. 4651 (1976) (commonly referred to as the Relocation Act), and regulations and guidelines promulgated thereunder, and with the approval of the

Department of Housing and Urban Development (HUD). This acquisition occurred as a result of, and was directly attributable to, the severe flood damage caused in the Corning, N.Y., area by hurricane Agnes. The payment of $13,000 was equal to the fair market value of petitioners' real property according to a November 1970 appraisal of the property.

On December 15, 1972, petitioners received an additional $11,000 from the Corning Urban Renewal Agency under subchapter II of the Relocation Act for purposes of purchasing a replacement dwelling comparable in all material respects to the preflood condition of their damaged residence.

On their joint 1972 Federal income tax return, petitioners claimed a casualty loss deduction under section 165 in the amount of $30,677.72. They applied $17,003.84 against their income for 1972 and carried back the balance to 1969 and 1970. In his notice of deficiency, respondent disallowed $13,542 of the claimed casualty loss deduction for lack of substantiation, thus reducing petitioners' claimed net operating loss carryback deduction for 1969 from $13,673.88 to $232.05 and eliminating any net operating loss carryover deduction for 1970. By amendment to his answer filed by leave of the Court at the conclusion of trial to conform the pleadings to the proof, respondent now maintains that petitioners are not entitled to any net operating loss carryback deduction for 1969.

The parties agree that petitioners suffered a $13,610.72 loss of personal property in the flood. Petitioners concede that the amount of the casualty loss as finally determined should be reduced by $5,000, the amount by which repayment was forgiven of a loan to petitioners from the Small Business Administration.

## OPINION

Section 165 permits individuals to deduct losses suffered upon the damage to or destruction of nonbusiness property by reason of fire, storm, shipwreck, or other casualty, or from theft to the extent that the amount of each such loss not compensated for by insurance or otherwise exceeds $100. See sec. 165(a) and (c)(3).

The extent of the flood damage to petitioners' real property is not susceptible of precise determination on this record, but,

doing the best we can with the materials before us (see *Heyn v. Commissioner*, 46 T.C. 302, 310 (1966)[3] ), we have found that the realty decreased in value by $10,000 as a result of the casualty.

A major issue for decision is whether the payment of $13,000 to petitioners by the Corning Urban Renewal Agency constitutes compensation "by insurance or otherwise" for their loss under section 165(a). Petitioners argue that the payment falls outside the scope of section 165(a) and, therefore, the amount of the casualty loss deduction should not be reduced. It is respondent's position that the payment is such compensation within the meaning of section 165(a). We agree with respondent.

"The 'insurance or otherwise' language in general indicates that the type of compensation received must be such that it was structured to replace what was lost. The burden of proof lies with the * * * [petitioners] to establish * * * [their] right to the deduction." *Estate of Bryan v. Commissioner*, 74 T.C. 725, 727 (1980).

We believe that the payment of an amount equivalent to the property's value at a time before the flood, made by a public agency designated to help relieve the financial losses caused by the natural disaster in the area of petitioners' property, was in the nature of insurance. The payment seems clearly to have been an attempt to put back into petitioners' pockets what had been lost due to the flood and solely on account of their loss caused by the flood. In any event, petitioners have not shown that that is not the case. See *Estate of Bryan v. Commissioner, supra*; *Shanahan v. Commissioner*, 63 T.C. 21 (1974). We hold, therefore, that the amount of petitioners' loss must be reduced by $6,000, the amount paid for the property by the Corning Urban Renewal Agency in excess of the property's postcasualty value as found in our findings of fact above.

We do not believe that the $11,000 relocation payment was in the nature of insurance. The stipulated facts here refer to the acquisition of petitioners' property on August 10, 1972, as having occurred as a result of, and as directly attributable to, the flood damage, but do not make the same statement regarding the relocation payment. Indeed, on brief, although it is not entirely clear, respondent appears to concede this issue. In any event, he

---

[3]See also *Corby v. Commissioner*, T.C. Memo. 1980–96.

points out that petitioners' property was in a depressed area and that the urban renewal agency was considering acquisition of petitioners' property even before the flood. Thus, we cannot say that the relocation payment was made on account of, and to reimburse petitioners for, their loss due to the flood, as we have said with respect to that portion of the acquisition payment which exceeded the postcasualty value of the property. "Using the principle ejusdem generis, the general words 'or otherwise' [in the phrase 'not compensated for by insurance or otherwise'] must be construed consistently with the specific term 'insurance.' " *Estate of Bryan v. Commissioner, supra* at 727. The relocation payment was not similar to insurance and, hence, falls outside the meaning of the statute.

Petitioners are entitled to a casualty loss deduction for 1972 based upon the loss of their personal property in the amount ($13,610.72) agreed upon by the parties plus $4,000 ($10,000 – $6,000) for the amount of the damage to their realty not compensated by insurance or otherwise, less the amount ($5,000) of the SBA loan forgiveness and the $100 limitation of section 165(c)(3); viz $12,510.72. Inasmuch as the amount so found is less than the amount taken by petitioners and allowed by respondent as a deduction for 1972 ($17,003.84), we hold that no amount is available as a net operating loss carryback deduction for 1969 or 1970 under section 172.

---

In accordance with the foregoing,

*Decision will be entered for the respondent.*