T.C. Memo. 1996-65

UNITED STATES TAX COURT

DUDLEY JOSEPH AND MYRNA DUPUY CALLAHAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4863-94.          Filed February 20, 1996.

Myrna Dupuy Callahan, pro se.

<u>Linda K. West</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WOLFE, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]  In a notice of deficiency, respondent determined

---

[1]    All section references are to the Internal Revenue Code in
effect for the years at issue, unless otherwise indicated.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

deficiencies in petitioners' Federal income tax for the years 1989, 1990, and 1991 in the respective amounts of $4,226, $4,504, and $5,625, and accuracy-related penalties under section 6662(a) in the respective amounts of $845, $901, and $1,125.

The issues for decision are: (1) Whether petitioners are entitled to deduct expenses incurred in connection with Myrna Dupuy Callahan's writing activity as expenses of an activity engaged in for profit for taxable years 1989, 1990, and 1991; (2) whether petitioners have substantiated and are entitled to deduct casualty losses in the amounts of $13,233 and $13,835 for taxable years 1989 and 1990, respectively; (3) whether petitioners have substantiated and are entitled to deduct certain Schedule A expenses for taxable year 1991; (4) whether petitioners' medical expense deductions for taxable years 1989, 1990, and 1991 must be recalculated in accordance with any adjustments to petitioners' adjusted gross income; (5) whether petitioners are entitled to deduct State sales taxes in the amount of $1,964 for taxable year 1990; (6) whether petitioners have substantiated and are entitled to deduct charitable contributions in excess of $4,216 for taxable year 1990; and (7) whether petitioners are liable for penalties for negligence or disregard of rules or regulations under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Plaquemine, Louisiana, when their petition was filed.

Myrna Dupuy Callahan (petitioner) graduated from high school with honors and attended Our Lady of Lake College in Baton Rouge, Louisiana, where she took classes in general nursing, psychology, and chemistry. She eventually became a registered cosmetologist after an illness prevented her from completing her training in nursing. She operated Vogue Beauty Box for 13 years, and for 1 year during that period--when her daughter was old enough for kindergarten--she also opened and operated a neighborhood kindergarten. Subsequent to running Vogue Beauty Box, petitioner became a salesperson for Home Decorators, Inc., and two insurance companies, Lincoln National and Prudential.

Petitioner has engaged in two hobbies since the late 1970's: entering sweepstakes, and refunding and rebating with coupons. Over time petitioner developed a filing and recordkeeping system, plus various techniques or strategies designed to maximize the savings available from product coupons and rebate offers. She also developed a methodology intended to improve her chances of winning sweepstakes contests. After a friend suggested she document her refunding and rebating methodology, in 1982

petitioner wrote two manuals, Mrs. M.'s Quick & Easy Refund &
Rebate System and Mrs. M.'s Winning Sweepstakes System.  Sometime
thereafter she placed a $5 advertisement in a coupon booklet for
persons interested in testing her systems and also made inquiries
with several publishers.  Although no one was interested in
publishing her manuals, some people did respond to her
advertisement.

Petitioner copyrighted Mrs. M.'s Quick & Easy Refund &
Rebate System in 1984 and self-published both manuals in 1992
under a name and logo of her own design, $'s Info Books.  It is
unclear from the record if and when Mrs. M.'s Winning Sweepstakes
System was copyrighted.  Each manual is printed on 8 1/2 inch by
11 inch paper, one-sided, and spiral bound on the left side.  The
refund and rebate guide is 15 pages in length, including an
inside cover page, table of contents, 2 pages of comments from
test marketers, and 2 pages of order forms.  The sweepstakes
manual is nine total pages, including an inside cover page, two
pages of order forms, and two pages of comments from test
marketers.

In 1992, 1993, and 1994, petitioner generated publicity for
her manuals in the local print and broadcast media, and attended
a number of autograph parties at local bookstores, libraries, and
clubs.  During those same years she wrote to published authors
for advice, applied to newspapers and publishers for writing

assignments, and sought financial assistance for her writing endeavors.  In 1994 she acquired a local occupational license "to pursue and follow the Occupation of wholesale retail."  Petitioner self-publishes her manuals on a prepaid basis only for $10.00 each, plus $1.00 for postage and handling.  Her manuals have been listed on two databases compiled by R.R. Bowker Company (Bowker), Literary Market Place:  A Directory of American Book Publishers and Books in Print.

The gross receipts, gross income, expenses, and losses attributed to $'s Info Books and as reported by petitioners on their Forms 1040, Schedules C for taxable years 1987 through 1992 are summarized as follows:

| Year | Gross Receipts | Gross Income | Expenses | Losses |
|------|---------|--------|----------|--------|
| 1987 | $80 | $80 | $6,061 | $(5,981) |
| 1988 | -0- | 3 | 6,333 | (6,330) |
| 1989 | -0- | 33 | 13,059 | (13,026) |
| 1990 | 134 | 124 | 23,287 | (23,163) |
| 1991 | -0- | 27 | 21,641 | (21,614) |
| 1992 | 432 | (68) | 25,411 | (25,343) |
| Total | 646 | 199 | 95,792 | (95,457) |

The principal source of petitioners' receipts reported on Schedules C for 1987-1992 was prizes and sweepstakes winnings.  Among the sources of petitioners' reported Schedule C losses were deductions for depreciation of an electric screwdriver and a weedwacker.  Their Schedules C losses contributed to petitioners' receiving full tax refunds for 1989, 1990, and 1991.

In June of 1989, petitioners' house sustained damages from termite infestation as well as a tornado and flood caused by Tropical Storm Allison. Tropical Storm Allison was declared a major disaster that year, and petitioners were awarded a grant in the amount of $5,660 from the Federal Emergency Management Agency (FEMA) and the Louisiana State Individual and Family Grant (IFG) Program. Termite damage required repairs in 1990 as well.

OPINION

Respondent determined deficiencies in petitioners' 1989, 1990, and 1991 Federal income taxes in the amounts of $4,226, $4,504, and $5,625, respectively, and penalties pursuant to section 6662(a) for negligence in the amounts of $845, $901, and $1,125, respectively. Respondent's determinations are presumed correct, and petitioners have the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

1. Publishing Activity

Section 183 provides that if an activity engaged in by an individual is not engaged in for profit, no deduction attributable to such activity shall be allowed, except as provided in section 183(b).[2] An "activity not engaged in for

---

[2] In the case of an activity not engaged in for profit, sec. 183(b)(1) allows a deduction for expenses that are otherwise deductible without regard to whether the activity is engaged in for profit. Sec. 183(b)(2) allows a deduction for expenses that would be deductible only if the activity were engaged in for profit, but only to the extent the total gross income derived from the activity exceeds the deductions allowed by sec. 183(b)(1).

profit" is any activity for which deductions would not be allowed under section 162 or under paragraph (1) or (2) of section 212. Sec. 183(c). Section 162 allows a deduction for all the ordinary and necessary expenses paid or incurred in carrying on a business. Section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. The profit standards applicable to section 212 are the same as those used in section 162. See Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988).

For a taxpayer to deduct expenses of an activity pursuant to section 162, he must show that he engaged in the activity with an actual and honest objective of making a profit. Sec. 183; Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Fuchs v. Commissioner, 83 T.C. 79, 97-98 (1984); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Beck v. Commissioner, 85 T.C. 557, 569 (1985). "Profit" in this context means economic profit, independent of tax savings. Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all

relevant facts and circumstances.  Hulter v. Commissioner, supra at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981).  The burden of proving such objective is on petitioner.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).  Greater weight is given to objective facts than to a taxpayer's statement of intent. Beck v. Commissioner, supra at 570; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a non-exclusive list of factors which should be considered in determining whether an activity is engaged in with the requisite profit objective.  The nine factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used by the taxpayer may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  No single factor, nor the existence of even a majority of the factors, is controlling, but rather it is

an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative.

Petitioner did not carry on her writing activity in a businesslike manner. Her resume lists bookkeeping and accounting among her business experiences and skills, yet petitioner did not maintain any type of records, books, or accounting method relating to her writing activity. At trial she submitted copies of hundreds of checks written in 1989, 1990, and 1991 (over 400 checks for 1989 alone). The various payees included Wal-Mart, K-Mart, Shell, Exxon, Southern Bell, J.C. Penney, Citibank, and various individuals. A majority of the checks fail to indicate what was purchased or for what purpose the particular expenditure was made. We find petitioner's "shoebox method" of recordkeeping inconsistent with a business or an activity for profit, particularly in light of her claim to past bookkeeping and accounting experience.

Petitioner has little expertise or experience as a professional writer. She testified that she ghostwrote for a political candidate and has had "many of [her] works from about [her] junior year of high school published in local and other newspapers, unedited." However, petitioner did not state whether she was remunerated for any of her written work or campaign ghostwriting, and she did not submit into evidence any of her purportedly published material, except for the items directly in issue in this case. We are not required to accept petitioner's

self-serving and uncorroborated testimony, particularly where other and better evidence to prove the point in question is available. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964).

The record does not disclose the time and effort expended by petitioner on her writing activity for taxable years 1989, 1990, and 1991. However, the bulk of her efforts detailed in the record were expended before and after the taxable years in issue. Each of the manuals that petitioner has introduced as her major income-producing works was written in 1982. Petitioner made inquiries with publishers and placed her only advertisement for test marketers during the 1980's. The manuals were self-published in 1992. Publicity for the manuals and petitioner's autograph parties occurred no earlier than 1992, and she did not write to published authors or seek financial assistance until after 1991. The record raises a strong inference that petitioner did little or nothing with respect to her writing activity during the taxable years at issue, 1989-1991.

On their Federal income tax returns for 1987 through 1992 (the only returns submitted into evidence), petitioners never reported a net profit from petitioner's writing activity. During that time her writing activity generated losses in excess of $95,000, which were used to offset petitioners' other taxable income, including petitioner Dudley J. Callahan's salary for each year, which far exceeded the amounts involved in petitioner's

Schedules C activity.  Petitioners received full refunds of all taxes withheld for the years in issue.  A record of substantial losses over many years and the absence of any likelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention.  Hendricks v. Commissioner, 32 F.3d 94, 99 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Golanty v. Commissioner, 72 T.C. at 426-427; Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

The remaining factors suggested by the income tax regulations warrant only a brief note.  Nothing in the record shows, and petitioners did not argue, that petitioner used any assets in her writing activity that would appreciate in value. Petitioners' Federal income tax returns reflect a history of losses from her writing activity, which is also reflective of the extent of petitioner's success or lack thereof in carrying on her writing activity.  Petitioners' financial status is such that it does not influence the analysis in either direction.  Finally, the record indicates that petitioner enjoys her status as a self-published writer.

Petitioner has failed to prove that she had an actual and honest profit objective for the taxable years at issue.  See Dreicer v. Commissioner, 78 T.C. at 645; see also Lesher v. Commissioner, T.C. Memo. 1991-161; Klapper v. Commissioner, T.C. Memo. 1990-372, affd. without published opinion 935 F.2d 1278 (2d Cir. 1991); Sherman v. Commissioner, T.C. Memo. 1989-269, each

holding that the writing and supposedly related activities in such case were not conducted for profit. Petitioner did not carry on her activity in a businesslike manner. Refunding and rebating, and entering sweepstakes, have long been hobbies that petitioner enjoys. She recorded her methodologies in 1982 at the suggestion of a friend and with the intention of helping her friends save money on groceries. Neither manual was published for 10 years until petitioner "self-published" them at an area copy shop. It was not until then, after the taxable years in issue, that petitioner pursued financial assistance, wrote a few published authors, and sought publicity for herself. The record does not disclose how much time, if any, petitioner spent on her writing activity during the taxable years at issue, 1989, 1990, and 1991. On their 1989 and 1991 Schedules C petitioners reported gross receipts of zero; for 1990 they reported $134 in gross receipts, all of which was from prizes and awards. Moreover, there was no showing that petitioners ever made a net profit from petitioner's writing activity. Respondent is sustained on this issue.

2. Casualty Losses

Petitioners claimed casualty losses on their 1989 and 1990 returns in the respective amounts of $13,233 and $13,835. They attributed these losses to damages sustained from Tropical Storm Allison and termite infestation. Petitioners were unable to apportion the total damages between Tropical Storm Allison and

the termite infestation. Respondent disallowed petitioners' claimed casualty losses on the grounds that the cost of repairing termite damage is not a casualty loss and for lack of substantiation.

Section 165(a) allows a deduction for losses sustained during the taxable year and not compensated for by insurance or otherwise. In the case of individuals, deductible losses are limited to losses incurred in a trade or business or a transaction entered into for profit, and losses resulting from "fire, storm, shipwreck, or other casualty, or from theft." Sec. 165(c). An "other casualty" has been defined by the courts to mean a loss proximately caused by a sudden, unexpected, or unusual event, excluding progressive deterioration. Maher v. Commissioner, 680 F.2d 91, 92 (11th Cir. 1982), affg. 76 T.C. 593 (1981); Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940); White v. Commissioner, 48 T.C. 430, 435 (1967). Casualty losses for individuals are deductible only to the extent that the loss exceeds $100 per casualty and 10 percent of adjusted gross income (AGI). Sec. 165(h).

An individual's casualty loss is "treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Sec. 1.165-1(d)(1), Income Tax Regs. The amount of a casualty loss is generally computed as the fair market value of the property immediately

before the casualty, minus the fair market value of the property immediately after the casualty, not to exceed, however, the property's adjusted basis.  Helvering v. Owens, 305 U.S. 468, 471 (1939); Millsap v. Commissioner, 46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. The determination of these respective values "shall generally be ascertained by competent appraisal," and any such deduction "shall be limited to the actual loss resulting from damage to the property."  Sec. 1.165-7(a)(2)(i), Income Tax Regs.  The cost of repairs to the property damaged is also acceptable as evidence of the loss of value under certain circumstances.  Sec. 1.165-7(a)(2)(ii), Income Tax Regs.

Termite damage generally does not give rise to a deductible casualty loss because it does not occur suddenly, unexpectedly, or from an unusual cause.  United States v. Rogers, 120 F.2d 244 (9th Cir. 1941); Dodge v. Commissioner, 25 T.C. 1022, 1026 (1956).  Only in exceptional situations where damages from termite infestation occurred in a relatively short period of time, ranging, for example, from 3 to 14 months, has a casualty loss been sustained.  Rosenberg v. Commissioner, 198 F.2d 46 (8th Cir. 1952), revg. 16 T.C. 1360 (1951); Kilroe v. Commissioner, 32 T.C. 1304 (1959); Buist v. United States, 164 F.Supp. 218 (E.D. S.C. 1958); Shopmaker v. United States, 119 F.Supp. 705 (E.D. Mo. 1953); see Dodge v. Commissioner, supra, for a detailed analysis of the cases.

In the present case, nothing in the record shows that petitioners' termite infestation occurred over a short period of time. Petitioner testified that when petitioners were deciding whether to paint their house or put up vinyl siding, painters advised them that the wood was in good condition. However, petitioner failed to indicate in what year she received this suggestion, and there is no evidence or indication that the painter was specifically looking for termite infestation or was qualified to do so. Moreover, since his painting contract turned on his analysis of the wood, the painter's opinion could hardly be considered unbiased. We hold that petitioners are not entitled to claim as casualty losses their costs of repairing any termite damage incurred in 1989 and 1990.

Petitioners' casualty losses purportedly incurred as a result of Tropical Storm Allison present an issue of substantiation. Generally, taxpayers are required to substantiate claimed deductions and credits by maintaining the records needed to establish the amount of such items. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Even though a taxpayer fails to maintain adequate records, under some circumstances we may estimate the amount a taxpayer is entitled to deduct if he provides a means of making a reasonable estimate of the expense. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, in order for us to make an estimate, there must be sufficient evidence to show that at least the estimated amount actually was

spent or incurred for the stated purpose.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  Furthermore, in making an estimate, we must bear heavily on petitioner, "whose inexactitude is of his own making."  Cohan v. Commissioner, supra at 544.

Petitioners did not submit any evidence or testify to the effect that their house was appraised by a competent professional, either before or after the damages were sustained. In addition, petitioners were unable to separate the structural damages caused by Tropical Storm Allison from the structural damages caused by the termite infestation.  To substantiate the casualty losses claimed on their returns, petitioners submitted a letter from FEMA, which references their 1989 grant of $5,660, photocopies of checks and receipts, handwritten lists of expenditures, and a written statement from one James Robinson, dated August 25, 1993, stating that he performed repairs to their house sustained from Tropical Storm Allison.

We consider the letter from FEMA sufficient to substantiate that petitioners sustained damages from Tropical Storm Allison, but only for taxable year 1989 and only in the amount of the grant, $5,660.  Cohan v. Commissioner, supra; sec. 1.165-7(a)(2)(ii), Income Tax Regs.  The checks and receipts submitted by petitioners, however, are insufficient to substantiate the 1989 casualty loss in excess of $5,660.  Many of the checks do not indicate what was purchased or for what purpose the

particular expenditure was made, and some of the photocopied receipts and handwritten lists were insufficient on their face. With respect to taxable year 1990, we find that the events fixing the loss inflicted by Tropical Storm Allison all occurred in 1989. The storm hit in the middle of 1989, and petitioners were awarded their FEMA grant that same year.

An outright disbursement or grant made by a public agency designated to help relieve any financial losses caused by a natural disaster is in the nature of "insurance or otherwise." Spak v. Commissioner, 76 T.C. 464, 467 (1981); Shanahan v. Commissioner, 63 T.C. 21 (1974). Consistent with this rule, on their 1989 Form 4684, Casualties and Thefts, petitioners reported their FEMA grant on the line provided for "insurance or other reimbursement". The record shows that petitioners failed to substantiate any casualty losses in excess of the amount compensated for by insurance or otherwise, and that the events fixing the damages caused by Tropical Storm Allison all occurred in 1989. Accordingly, we hold that petitioners are not entitled to claim a casualty loss for either of the taxable years 1989 and 1990.

3.  1991 Schedule A Miscellaneous Deductions

On their 1991 Schedule A, Form 1040, petitioners claimed miscellaneous deductions in the amount of $22,237. Petitioners indicated on their return that this amount consisted of the following:  $126 paid to acquire stock, $575 for term insurance,

$1,166 for insurance on investments, and $20,370 for repairs and depreciation. Written at the top of Schedule A was "ANDREW", in reference to Hurricane Andrew. Respondent disallowed petitioners' claimed miscellaneous deductions for 1991 for lack of substantiation.

As noted, taxpayers are generally required to substantiate claimed deductions and credits by maintaining the records needed to establish the amount of such items. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Petitioners did not elaborate upon which of the reported Schedule A expense deductions related to Hurricane Andrew, although petitioner did testify that "labor" expenses reported on line 21 of Schedule C for that year were for repairs caused by Hurricane Andrew. Petitioners submitted photocopies of hundreds of checks, whose payees included Southern Bell, Reader's Digest, American Family Publishers, J.C. Penney Insurance, Allstate Insurance, Shell, Exxon, Texaco, and "cash," among others. Most of the checks do not indicate what was purchased or the purpose of the expenditure. When asked to clarify the stock and insurance expenses, petitioner testified only that the stock was purchased to create a "perpetual fund for the maintenance of" their parents' graves. We find both the photocopies of the checks and petitioner's testimony insufficient to substantiate the Schedule A miscellaneous deductions claimed for 1991. Respondent is sustained on this issue.

4. Medical Expenses

In the notice of deficiency, respondent adjusted petitioners' gross medical expenses as reported on Schedules A, lines 1a and 1, of their 1989, 1990, and 1991 returns (decreasing the amounts reported for 1989 and 1990, and increasing the amount reported for 1991). At trial, respondent stated that the gross amounts reported were not in dispute. We consider respondent to have conceded the gross amounts of medical expenses reported on the returns. Respondent argues only that the amount of medical expenses petitioners may deduct must be recalculated in light of any adjustments to their adjusted gross income by reason of this opinion.

Section 213 allows a deduction for expenses paid for medical care of the taxpayer, his spouse, or a dependent, which is not compensated for by insurance or otherwise, to the extent that such expenses exceed 7.5 percent of adjusted gross income. The amount of the deduction for medical expenses obviously depends upon the taxpayer's adjusted gross income. Accordingly, we hold that petitioners' allowable medical expense deductions for the taxable years at issue must be recalculated to reflect any adjustments to their adjusted gross income by reason of this opinion.

5. State Sales Taxes

On their 1990 Schedule A, Form 1040, petitioners claimed a deduction for "other taxes" in the amount of $1,964. Respondent

determined that this amount was paid for State sales taxes and disallowed the deduction in full on the grounds that State sales taxes are not deductible.

Prior to 1986, section 164(a)(4) allowed a deduction for State and local general sales taxes paid or accrued within the taxable year. Section 164(a)(4) was repealed by section 134(a)(1) of The Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2116. Petitioners offered no evidence that the $1,964 they deducted for "other taxes" represented anything other than State sales taxes. In fact, petitioners state in their posttrial memorandum that the "other taxes" were State sales taxes on personal property. Respondent is sustained on this issue.

6. <u>Charitable Contributions</u>

On their 1990 Schedule A, Form 1040, petitioners claimed charitable contributions in the amount of $4,342. Respondent disallowed $126 of this amount for lack of substantiation.

Section 170 allows a deduction for charitable contributions subject to certain limitations. If a taxpayer makes a cash contribution, the taxpayer in the absence of a canceled check or receipt from the donee must maintain other reliable written records showing the name of each charity, and the date and the amount of each contribution. Sec. 1.170A-13(a)(1)(iii), Income Tax Regs.

Petitioners offered no evidence to substantiate their charitable contributions apart from the photocopies of hundreds

of checks written in 1990. It is unclear which of these, if any, purportedly substantiate the $126 disallowed by respondent. Petitioners have not satisfied their burden of proof. Respondent is sustained on this issue.

7. Negligence

For taxable years 1989, 1990, and 1991, respondent determined that petitioners are liable for the accuracy-related penalty under section 6662(a) for negligence in the respective amounts of $845, $901, and $1,125. Section 6662(a) and (b)(1) imposes an accuracy-related penalty on any portion of an underpayment which is attributable to negligence or disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Petitioners have the burden of proof to show that the penalty should not be sustained by the Court. Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989).

Petitioners submitted one piece of evidence with respect to the negligence penalty, a one-paragraph statement clipped from a text, magazine, or pamphlet offering tax tips. This particular clipping states that business expenses of writers are deductible in the year incurred and need not be expensed over time. Petitioners' reliance on this comment, regardless of its

accuracy, does not excuse their negligence. None of the adjustments to petitioners' taxes at issue herein, or the deficiencies resulting therefrom, derive from expenses deducted in the wrong year. After reviewing the entire record, including petitioners' persistent claims to substantial deductions for items that plainly represent their nondeductible living expenses and also petitioners' failure to substantiate claims, we are convinced that petitioners' deficiencies for 1989, 1990, and 1991 are the result of negligence. Respondent is sustained on this issue.

Petitioners raised several other questions in their post-trial briefs which we address summarily. First, the notice of deficiency was timely with respect to all 3 years.[3] Second, the deficiency notice was not arbitrary and excessive. Pasternak v. Commissioner, 990 F.2d 893, 897 (6th Cir. 1993), affg. Donahoe v. Commissioner, T.C. Memo. 1991-181; Campbell v. Commissioner, 90 T.C. 110, 115 (1988). Third, petitioners failed to provide any evidence that they were subjected to unnecessary examination or investigations, or that if they were subjected to multiple examinations for the same taxable year, that they objected thereto. Fourth, petitioners are not entitled to a refund for

---

[3]    Petitioners formally extended the time to assess their Federal income tax for taxable year 1989 to anytime on or before Oct. 18, 1994. The notice of deficiency was issued prior to Oct. 18, 1994, and within the 3-year limitations period with respect to taxable years 1990-91. Secs. 6501, 6503.

any of the years at issue because they did not pay any taxes in 1989, 1990, or 1991.  Amounts withheld during those years were fully refunded to petitioners.  Finally, there are no grounds to award petitioners litigation costs under section 7430, since petitioners are not the prevailing party.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.