T.C. Memo. 1997-165


UNITED STATES TAX COURT


ESTATE OF DAVID J. DICKERSON, DECEASED, DOROTHY DICKERSON,
EXECUTOR AND DOROTHY DICKERSON, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 23458-94, 23459-94,            Filed April 1, 1997.
            23518-94.


Audrey J. Orlando, for petitioner.

Lavonne D. Lawson, for respondent.


MEMORANDUM OPINION

VASQUEZ, Judge:  Respondent determined the following

deficiencies in, additions to, and penalties on petitioners'

Federal income taxes:

_____

[1]  Cases of the following petitioners are consolidated
herewith:  Michael and Beverly Michoff, docket No. 23459-94;
Michael Michoff, Jr., and Kimberly L. Michoff, f.k.a. Kimberly
Colombo, docket No. 23518-94.

Estate of David Dickerson and Dorothy Dickerson (the Dickersons):

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1989 | $21,113 | $4,223 |
| 1990 | 26,378 | 5,276 |

Michael Michoff, Sr., and Beverly Michoff (Michoff, Srs.):

| | | Additions to Tax | | Penalty |
|------|-----------|------------------|----------|-----------|
| Year | Deficiency | Sec. 6653(a)[1] | Sec. 6661 | Sec. 6662(a) |
| 1986 | $29,594 | $1,480 | $7,399 | -0- |
| 1987 | 8,447 | 422 | 2,112 | -0- |
| 1989 | 4,360 | -0- | -0- | $872 |
| 1990 | 3,647 | -0- | -0- | 729 |

Michael Michoff, Jr. (Michoff, Jr.):

| | | Additions to Tax | | | | Penalty |
|------|-----------|-----------|--------------|-----------|-----------|-----------|
| Year | Deficiency | Sec. 6651 | Sec. 6653(a) | Sec. 6654 | Sec. 6661 | Sec. 6662(a) |
| 1986 | $103,152 | $25,788 | [1]$5,158 | $4,991 | -0- | -0- |
| 1987 | 30,846 | 7,712 | [1]1,542 | 1,668 | -0- | -0- |
| 1988 | 8,379 | -0- | 419 | -0- | $2,095 | -0- |
| 1989 | 24,921 | -0- | -0- | -0- | -0- | $4,984 |

Michael Michoff, Jr., and Kimberly Michoff, f.k.a. Kimberly Columbo, (together known as Michoff, Jrs.):

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1990 | $9,208 | $1,842 |

Kimberly Colombo:

| | | Addition to Tax | Penalty |
|------|-----------|-----------------|-----------|
| Year | Deficiency | Sec. 6653(a)[1] | Sec. 6661 |
| 1986 | $16,587 | $829 | $4,147 |

[1] If the penalty under sec. 6653(a)(1)(A) applies, the penalty under sec. 6653(a)(1)(B) will also apply.  Sec. 6653(a)(1)(B) includes 50 percent of the interest attributable to that portion of the underpayment which is due to negligence or disregard of the rules or regulations.

Pursuant to respondent's motion, these cases have been consolidated for trial, briefing, and opinion.  All section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are:

Issues With Respect to the Dickersons

1.  Whether the Dickersons incurred taxable gain in the amount of $57,855 in the 1990 tax year from the sale of two lots of real property;

2.  whether the Dickersons received rental income in the amount of $3,550 in the 1990 tax year from the rental of real property;

3.  whether the Dickersons received unreported taxable income in the 1989 and 1990 tax years in the amounts of $55,097 and $2,800, respectively;

---

[2]  The following issues have been conceded:
The Michoff, Srs., claimed exemptions to which they were not entitled for their sons, Michael Michoff, Jr., and Steven Michoff, in the 1986 tax year.
The Michoff, Srs., claimed exemptions to which they were not entitled for Steven Michoff in the 1987 and 1989 tax years.
The Michoff, Srs., received unreported interest income in the 1989 and 1990 tax years in the amounts of $54 and $62, respectively.
The Michoff, Srs., failed to report taxable State income tax refunds on their 1989 and 1990 income tax returns in the amounts of $39 and $159, respectively.
Michael Michoff, Jr., received unreported interest income in the 1986 and 1987 tax years in the amounts of $2,089 and $854, respectively.
Respondent concedes the deficiency against Kimberly Michoff for the 1986 tax year.

4. whether the Dickersons are entitled to any Schedule C deductions with regard to a Christmas tree farm for the 1989 and 1990 tax years;

5. whether the Dickersons are entitled to Schedule A deductions for loan origination fees and mortgage interest in the 1989 and 1990 tax years; and

6. if any underpayments of tax exist, whether such underpayments by the Dickersons are due to negligence or disregard of rules or regulations.

Issues With Respect to the Michoff, Srs.

7. Whether the Michoff, Srs., failed to report a taxable withdrawal from their pension fund in the amount of $9,047 for the 1987 tax year;

8. whether the Michoff, Srs., received unreported taxable income in the 1986, 1987, 1988, and 1989 tax years in the respective amounts of $75,740, $10,107, $10,673, and $4,600;

9. whether the Michoff, Srs., are entitled to itemized deductions for casualty losses and telephone expenses for their 1989 and 1990 tax years;

10. whether the Michoff, Srs., are entitled to any Schedule C deductions with regard to a Christmas tree farm for their 1990 tax year;

11. if any underpayments of tax exist, whether such underpayments by the Michoff, Srs., are due to negligence or disregard of rules or regulations; and

12. whether the Michoff, Srs., substantially understated their tax in the 1986 and 1987 tax years.

Issues With Respect to Michoff, Jr., and Kimberly Michoff

13. Whether Michoff, Jr., received unreported income in the 1986, 1987, 1988, and 1989 tax years in the amounts of $39,850, $29,879, $24,422, and $68,798, respectively;

14. whether the Michoff, Jrs., had unreported taxable income in the 1990 tax year in the amount of $22,649;

15. whether Michoff, Jr., realized a capital gain from the sale of a partnership interest in the 1986 tax year in the amount of $26,058;

16. whether Michoff, Jr., is entitled to any Schedule C deductions with regard to a limousine activity for his 1989 tax year;

17. whether Michoff, Jr., failed to timely file his Federal income tax returns for the 1986 and 1987 tax years;

18. whether Michoff, Jr., failed to pay estimated tax for the 1986 and 1987 tax years;

19. if any underpayments exist, whether the underpayments of tax for Michoff, Jr., are due to negligence or disregard of rules or regulations;

20. whether Michoff, Jr., substantially understated his tax for the 1988 tax year; and

21. if any underpayment of tax exists, whether such underpayment by the Michoff, Jrs., for the 1990 tax year is due to negligence or disregard of rules or regulations.

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

All petitioners in these consolidated cases resided in California at the time they filed their respective petitions. These consolidated cases involve three generations of the same family. For convenience, we combine our findings of fact with our opinion under each separate issue heading.

Burden of Production

Petitioners argue that the notices of deficiency are arbitrary and excessive on their face, and, therefore, the burden of production should shift to respondent. We disagree. Respondent's determinations are entitled to a presumption of correctness. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The burden is upon petitioners to demonstrate in the first instance that the determination is arbitrary and unreasonable in order to deprive it of the presumption of correctness. Harbin v. Commissioner, 40 T.C. 373, 376 (1963). Petitioners have failed to so demonstrate. Respondent has provided sufficient evidence to convince this Court that the notices of deficiency were neither arbitrary nor unreasonable. Therefore, unless otherwise indicated, for all of the issues the

burden rests with petitioners to demonstrate that respondent's determinations are erroneous.  Rule 142(a).

A rare exception to this rule is where the Commissioner, in a case involving unreported income, introduces no evidence but rests on the presumption of correctness and the taxpayer challenges the deficiency on the grounds that it is arbitrary. Schad v. Commissioner, 87 T.C. 609, 618 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987).  The Commissioner in these circumstances must show some minimal evidentiary foundation connecting the taxpayer to an income-producing activity or to the funds.  Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982), affg. an Order of this Court; Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th. Cir. 1979), revg. 67 T.C. 672 (1977).  Whether or not respondent has substantiated her determination of unreported income with this evidentiary foundation will be discussed as the issue is addressed for each petitioner.

Petitioners in these cases rely heavily on their own testimony.  We found some of petitioners' testimony to be general, vague, conclusory, and/or questionable in certain material respects.  Under the circumstances presented here, we are not required to, and generally do not, rely on petitioners' testimony to sustain their burden of establishing error in respondent's determinations.  See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger

v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Gain From the Sale of Real Property

In May 1990, the Dickersons received $9,748 in proceeds from the sale of property located at lot 58 of Lake Mont Pines (lot 58). The Dickersons had a zero basis in lot 58.[3] Also in 1990, the Dickersons sold lot 59 of Lake Mont Pines (lot 59) for $89,000. The Dickersons' total basis in lot 59 was $32,061.47. The parties have stipulated that the Dickersons had taxable gain from the sale of the two lots in the amount of $57,855. The Dickersons now argue that they should be entitled to increased basis in the property due to litigation costs which were not reimbursed. The evidence relating to these costs was solely in the form of trial testimony. Petitioners presented no further evidence of any litigation costs. Petitioners have failed to prove that any litigation costs were incurred and, if they had been incurred, why petitioners are entitled to an increase in basis as a result. We sustain respondent on this issue.

Rental Income

Respondent argues that the Dickersons received unreported rental income in 1990 in the amount of $3,550. The Dickersons leased residential property (the Green Ridge residence) to Roger and Linda Barrett (the Barretts) in 1990. The Dickersons

---

[3] This was conceded by petitioners on brief.

received a $1,000 cleaning deposit from the Barretts in that year. The Dickersons received payments from the Barretts with regard to the lease of the Green Ridge residence in the amount of $850 each on August 20, 1990, September 20, 1990, and October 30, 1990. The Dickersons never lived at the Green Ridge residence. The Dickersons presented no arguments why this amount should not be included in income. We therefore consider this issue to be abandoned and sustain respondent on this issue. See Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954).

Unreported Income--General

Respondent, using a bank deposits and expenditures analysis, determined that each of the petitioners had unreported income for some of the years in issue.

The United States Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie, has held that in order for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must come forward with substantive evidence establishing "some evidentiary foundation" linking the taxpayer to the income-producing activity, Weimerskirch v. Commissioner, supra at 361-362, or "demonstrating that the taxpayer received unreported income", Edwards v. Commissioner, 680 F.2d at 1270; see also Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), affg. an Order of this Court. We must examine the record to determine whether there is a minimal evidentiary foundation supporting respondent's

determination of unreported income.  The record, however, does contain substantive evidence supporting respondent's determination of unreported income.

Revenue Agent Anita Russell, using a bank deposits analysis, determined that petitioners had unreported income.  Use of the bank deposits method for reconstructing income is well established.  DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977).  Under the bank deposits method, there is a rebuttable presumption that all funds deposited to a taxpayer's bank account constitute taxable income.  Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); Haque Estate v. Commissioner, 132 F.2d 775, 777-778 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); DiLeo v. Commissioner, supra at 868.  Once there is evidence of actual receipt of funds by the taxpayer, that taxpayer has the burden of proving that all or a part of those funds are not taxable. Tokarski v. Commissioner, supra.  The Commissioner must take into account any nontaxable sources of deposits of which she is aware in determining the portion of the deposits that represent taxable income, but she is not required to trace deposits to their source.  Petzoldt v. Commissioner, 92 T.C. 661, 695-696 (1989).

This case is distinguishable from Weimerskirch v. Commissioner, supra at 362, where "the Commissioner did not attempt to substantiate the charge of unreported income by any

other means, such as by showing Weimerskirch's net worth, bank deposits, cash expenditures, or source and application of funds." Id. Additionally, in Weimerskirch, the taxpayer was not shown by admissible evidence to have actually possessed any of the funds that the Commissioner determined to be taxable income. In the instant case, the various petitioners were connected to the funds forming the basis of the deficiency by respondent's analysis of bank deposits and expenditures. "[C]onnecting * * * [the taxpayer] to the funds that form the basis of the deficiency is sufficient to give him the burden of proving the deficiency determination erroneous." Schad v. Commissioner, 87 T.C. at 620.

Respondent has substantiated her determination with predicate evidence; she used the bank deposits and cash expenditures method of income reconstruction. See Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), affg. T.C. Memo. 1991-636 (once the Tax Court has found the Commissioner has made a minimal evidentiary showing, the deficiency determination is presumed correct); Erickson v. Commissioner, 937 F.2d 1548, 1551 (10th Cir. 1991), affg. T.C. Memo. 1989-552 (the key is connecting taxpayers to assets, not to a business). The burden of proof therefore lies with petitioners to show error in respondent's determinations.

Unreported Income--the Dickersons

Revenue Agent Anita Russell, using a bank deposits analysis, determined that the Dickersons had unreported income in the

amounts of $55,097 and $2,800 for the tax years 1989 and 1990, respectively.[4]

The Dickersons made specific payments on their Primeline credit account in the total amount of $9,200, which is in issue in the 1989 tax year. These were not, however, the total payments made by the Dickersons on their Primeline credit account in the 1989 tax year.

The Dickersons made deposits into their El Dorado savings account in the amounts of $37,100 and $2,800 in the 1989 and 1990 tax years, respectively. These were not the total deposits made into this account in the 1989 and 1990 tax years.

Respondent also identified a cash expenditure which she added to the unreported income of the Dickersons for the 1989 tax year. This expenditure was the purchase of a cashier's check in the amount of $8,797 for purposes of purchasing the Green Ridge Drive residence.

Petitioners argue that the $8,797 cashier's check was purchased with loans from Dan Maggard. However, the check from Dan Maggard was deposited into the El Dorado account. Petitioners failed to show a canceled check that was used to

---

[4] Petitioners objected to respondent's proposed finding of fact which reads as follows: "Respondent's revenue agent conducted a bank deposits analysis of the Dickerson's income for 1989 and 1990." On brief, however, petitioners do not dispute that respondent's revenue agent conducted a bank deposits analysis; rather they argue that it was conducted improperly. This is typical of the argumentative and contradictory statements that appear throughout petitioners' briefs.

purchase the cashier's check, nor did they otherwise prove that the funds to purchase the check came from the El Dorado account. Petitioners have failed to establish that the cashier's check was purchased with funds from nontaxable sources.

Dorothy Dickerson testified that some of the money that she deposited into her El Dorado savings account was from checks from Michoff, Jr., her grandson, and that the rest was from cash that she had gathered "here and there." Petitioners further argue that the deposits came from gambling winnings that were offset by losses. For both the 1989 and 1990 tax years, the Dickersons reported substantial income from gambling as well as losses to offset that income. In performing the bank deposits analysis, respondent's agent backed out any gambling income that was reported on the Dickersons' income tax returns. The Dickersons have failed to prove any additional gambling losses beyond those already reported by them and allowed by respondent in the 1989 and 1990 tax years.

Additionally, petitioners contend that the $9,200 which they paid toward their Primeline credit account came from their cash reserves as well as previous withdrawals from that account. Petitioners, however, offered no persuasive evidence to substantiate this claim. Petitioners have failed to meet their burden of proof regarding this amount.

A $5,500 deposit made into the El Dorado account on March 20, 1989, came from a cashier's check purchased by Dan Maggard

and payable to Michoff, Jr.  Michoff, Jr., then endorsed the check over to the Dickersons.  This money was given to the Dickersons by Michoff, Jr., either as a gift or as a loan and is not therefore taxable to the Dickersons.

Respondent identified gambling as a source of the Dickersons' additional income.  Dorothy Dickerson loves to gamble.  Dorothy Dickerson could not identify what amounts she won and lost at gambling.

Respondent further contends that the Dickersons engaged in transactions with Michoff, Jr., from whom they received moneys and with whom they freely transferred property.  Respondent contends that Michoff, Jr., had sources of income which included a lucrative activity of selling drugs.  Respondent has not made any preliminary showing of why income from a drug selling activity of Michoff, Jr., should result in income to the Dickersons.  However, respondent has shown gambling to be a possible source of additional income which is sufficient to satisfy respondent's initial burden of connecting the Dickersons to an income-producing activity.  Furthermore, even without this showing, respondent has met her minimal evidentiary burden by performing a bank deposits analysis.

With respect to all items except the $5,500 deposit, petitioners have failed to show that the source of the funds was nontaxable.  Respondent's determination is sustained as to all amounts above the $5,500.

Loan Origination Fees and Mortgage Interest in 1989 and 1990

The Dickersons contend that they are entitled to a deduction of $2,199 for loan origination fees incurred to purchase the Green Ridge residence in 1989. Additionally, the Dickersons argue that they are entitled to deductions for mortgage interest of $4,012 and $8,779 for the years 1989 and 1990, respectively. Respondent contends that they are not entitled to these deductions because they were not made on a qualified residence within the meaning of section 163(h)(2)(D). Section 163(h)(2)(D) allows a deduction for any qualified residence interest. Section 163(h)(3)(A) provides, inter alia, that qualified residence interest includes acquisition indebtedness with respect to any qualified residence of the taxpayer. A qualified residence includes the principal residence of the taxpayer as well as one other residence which is used by the taxpayer as a residence. Sec. 163(h)(4)(A). This includes use by a family member, including a grandson. Secs. 280A(d)(2)(A), 267(c)(4). Michoff, Jr., the Dickerson's grandson, lived in the Green Ridge residence during 1989 except for the months the residence was rented to the Barretts. The Green Ridge residence therefore qualifies as a qualified residence during 1989. Because the residence was used by a family member for the requisite number of days during the year, the Dickersons have established that they are entitled to

deduct the loan origination fees[5] as well as the mortgage interest, subject to substantiation. Secs. 280A(d)(1) and (2), 267(c)(4). Respondent further argues that the Dickersons have not substantiated the claimed deductions and therefore are not entitled to them. Petitioners provided a U.S. Department of Housing and Urban Development Settlement Statement (settlement statement) which substantiates that petitioners paid $2,199 in loan origination fees as well as some amount of interest. If the record provides sufficient evidence that the Dickersons paid the mortgage interest, but they are unable to prove the exact amount, we can estimate the amount of the payments. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). In order for the Court to make such an estimate, we must have some basis in fact upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Mrs. Dickerson testified that the Dickersons paid the mortgage on the Green Ridge residence. Although we cannot determine the exact amount of interest paid by the Dickersons, we conclude that, based on Mrs. Dickerson's testimony and the settlement statement, it was at least as much as claimed on their Schedule A, and therefore we hold that they

---

[5] The loan origination fees are deductible ratably, over the life of the loan. Sec. 461(g)(1); cf. Huntsman v. Commissioner, 91 T.C. 917, 920 (1988), revd. 905 F.2d 1182 (8th Cir. 1990).

are entitled to the claimed deductions.  Respondent is sustained to the extent petitioners deducted loan origination fees above those ratably allocable to the 1989 tax year.

Christmas Tree Farm

The Dickersons claimed Schedule C expense deductions with regard to a tree farm business in the amounts of $1,345 and $1,100 in the 1989 and 1990 tax years, respectively.  The Dickersons claimed Schedule C losses for the tree farm business in the tax years 1985, 1986, 1987, 1988, 1989, and 1990.  The Dickersons reported zero receipts with regard to the tree farm business in the 1985, 1986, 1987, 1988, and 1989 tax years.  The Dickersons reported $800 in receipts with regard to the tree farm business in the 1990 tax year.  Respondent argues that the Dickersons are not entitled to the claimed deductions because the tree farm business was not engaged in for profit within the meaning of section 183.  This is a factual inquiry requiring a weighing of the evidence in the record.  Petitioners contend that they entered into and carried on the tree farm activity with the requisite profit objective and that, as a result, the deductions are allowed under section 162 or section 212.

Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed except as provided in section 183.

Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which

deductions are allowable for the taxable year under section 162 [trade or business] or under paragraph (1) or (2) of section 212 [expenses for the production of income]." For a deduction to be allowed under section 162 or section 212(1) or (2), taxpayers must establish that they engaged in the activity with an actual and honest objective of making an economic profit independent of tax savings. Antonides v. Commissioner, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Their expectation of profit need not have been reasonable; however, they must have entered into the activity, or continued it, with the objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs.

The burden is on petitioners to show error in respondent's determination that the Christmas tree farming activity was not engaged in for profit. Rule 142(a). Whether the requisite profit objective exists is determined by looking to all the surrounding facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a list of factors to be considered in the evaluation of a taxpayer's profit objective:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses from the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  The number of factors for or against the taxpayer is not necessarily determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others.  Cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980).  This list is nonexclusive, and no single factor or even a majority of factors necessarily controls.  Abramson v. Commissioner, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs.

After weighing all of the objective factors coupled with petitioner's statements of intent, we conclude that the Dickersons were not engaged in the tree farming activity for profit.  There is objective evidence which shows that the Dickersons did not have a profit objective in carrying on the tree farming business:  The Dickersons gave away many trees; no

business records were kept; there were losses over many years; the Dickersons only reported receipts in one year of operation; and the trees provided personal pleasure because they were located at the Dickerson's residence. Petitioners offer no legal argument but to say that they were engaged in the tree farming activity for profit; they offer no evidence but their own uncorroborated testimony. Petitioners have failed to meet their burden of proof. Petitioners are, however, entitled to deduct their expenses to the extent that they received gross income from the activity. Sec. 183(b)(2). To the extent that respondent has disallowed expenses in excess of gross receipts for the tree farming activity for the 1989 and 1990 tax years, we sustain respondent.

Failure To Report Pension Fund Withdrawal in 1987

The Michoff, Srs., made a taxable withdrawal from their pension plan in the 1987 tax year in the amount of $9,047. The Michoff, Srs., failed to report their pension income. This withdrawal was an early distribution from their pension plan. The parties stipulated to the above facts, and the Michoff, Srs., made no argument in their opening brief concerning the issue. In their reply brief, the Michoff, Srs., object to the stipulated facts and contend that this withdrawal was a total distribution as a result of the disability of Mr. Michoff, Sr., and therefore the 10-percent penalty should not apply. See sec. 72(t)(2)(A)(iii). Gross income includes any amount received from

an annuity, including a retirement plan, where an exception does not apply. Sec. 72(a). Additionally, unless an exception applies, there is a 10-percent additional tax on early withdrawals from qualified retirement plans. Sec. 72(t)(1). The Michoff, Srs., have offered no testimonial or documentary evidence to contradict their stipulations or to support an exclusion. Respondent's determination is therefore sustained on this issue.

## Unreported Income--Michoff, Srs.

Revenue Agent Anita Russell, using a bank deposits analysis, determined that the Michoff, Srs., received unreported taxable income in the 1986, 1987, 1988, and 1989 tax years. Based on this analysis, respondent, after concessions, argues that the Michoff, Srs., had unreported income for those years in issue in the amounts of $75,740, $10,107, $10673, and $4,600, respectively.

The Michoff, Srs., purchased a cashier's check from El Dorado Savings and Loan Association for the purpose of purchasing real property in the amount of $64,500 in the 1986 tax year.

The Michoff, Srs., made deposits in the amounts of $11,240 and $10,107 which are in issue to their El Dorado Savings and Loan Association account in the 1986 and 1987 tax years, respectively. These deposits do not make up the total amount deposited into this account in these years.

The Michoff, Srs., made deposits into their Placer savings account in the amounts of $6,200 and $4,600 which are in issue in the 1989 and 1990 tax years, respectively. These deposits do not make up the total amount of deposits into this account in 1989 and 1990. Some of these deposits were part of larger deposits.

The Michoff, Srs., made a payment on their Bank of America Visa account in the amount of $4,472.64 on August 18, 1989.

Respondent contends that the above deposits and expenditures are from unreported income of the Michoff, Srs. The Michoff, Srs., contend that the amounts at issue came from the following sources: "insurance refund", "cash reserve", "gambling winnings equal losses", "withdrawn and replaced from accounts", "cash withdrawn and replaced", "refund", "repayment of loan to Michael Michoff", and "transfer from Golden Union #1". The Michoff, Srs., argue that Beverly Michoff had saved money over many years and hid it from her husband because he had a gambling problem. They contend that many of the deposits in issue came from this cash reserve. Beverly Michoff testified that at one time she had almost $100,000 in cash in a can. Petitioners argue that some of the cash reserves came from a personal injury settlement of Michoff, Sr. Beverly Michoff testified that around 1971 they received approximately $60,000 in settlement of the back injuries of Mr. Michoff, Sr. No documentary evidence was presented regarding the personal injury settlement, and Beverly Michoff's testimony in this regard was vague. Beverly Michoff testified

that she took the settlement money along with money from the paychecks of Michoff, Sr., and hid them from Michoff, Sr. The funds that she used allegedly came from a personal injury settlement of Michoff, Sr., as well as the paychecks of Michoff, Sr., which were made out to him and which he picked up at work. We find it unlikely that Beverly Michoff could have taken these funds and hid them from Michoff, Sr., for so many years. Additionally, Beverly Michoff testified that her husband did not believe in banks. However, during the years in issue the Michoff, Srs., actively used savings accounts, credit card accounts, and a credit union account. Under all the circumstances, we are not required to accept the self-serving testimony of petitioner. Tokarski v. Commissioner, 87 T.C. at 77. Based on our review of the record and the circumstances, we find Beverly Michoff's explanation of a cash hoard not to be credible.

The explanations of the Michoff, Srs., as to their other deposits and expenditures which are at issue are equally lacking in credibility. They seek to rely on uncorroborated testimony and unsupported argument. This is not sufficient evidence to meet their burden of proof. The Michoff, Srs., have failed to prove that any of the amounts at issue are from nontaxable sources.

As a source of additional income, respondent identified the transactions of the Michoff, Srs., with their son. Respondent

argues that the evidence shows that the Michoff, Srs., freely transferred moneys and property between themselves and Michoff, Jr., and that Michoff, Jr., was involved in the sale of drugs during this period, which resulted in substantial income to himself and to his family, including the Michoff, Srs. Respondent contends that the Michoff, Srs., received money from Michoff, Jr., from his drug business but offers no explanation of why this would be taxable to the Michoff, Srs. We conclude that this is not a taxable source of income to the Michoff, Srs.

Respondent did, however, analyze the bank deposits and expenditures of the Michoff, Srs., to determine the amount of unreported income. Petitioners have failed to prove that any of the disputed amounts are from nontaxable sources. Respondent is sustained on this issue.

Casualty Losses and Telephone Expenses

The Michoff, Srs., claimed miscellaneous itemized deductions for alleged job required phone usage in the 1989 and 1990 tax years in the amounts of $264 and $394, respectively. The Michoff, Srs., admitted on brief that no evidence was provided to establish the deductions claimed for the alleged job required phone usage. Petitioners failed to meet their burden of proof, and therefore respondent's determination regarding the deductions for phone usage is sustained.

The Michoff, Srs., claimed itemized casualty loss deductions for the 1989 and 1990 tax years in the amounts of $3,965 and

$3,325, respectively. Michael Michoff, Sr., did not testify on behalf of the Michoff, Srs. Beverly Michoff did not know in what years the alleged casualty losses occurred. Beverly Michoff was unsure whether the items for which casualty losses were claimed were insured. The Michoff, Srs., did not provide any documentary evidence to establish the alleged casualty losses claimed on the 1989 and 1990 income tax returns of the Michoff, Srs. The Michoff, Srs., have the burden of proving that they are entitled to the deduction. Smith v. Commissioner, 76 T.C. 459, 463 (1981). The Michoff, Srs., have failed to meet this burden. Thus, respondent is sustained on this issue.

Christmas Tree Farm for the 1990 Tax Year

Respondent determined that the Michoff, Srs., improperly claimed Schedule C deductions in the amount of $4,300 with regard to a Christmas tree farm business. In their answers to respondent's requests for admissions the Michoff, Srs., admit that they were not entitled to claim any loss on the Christmas tree farm during the years in issue. Additionally, the parties have stipulated that the Michoff, Srs., claimed Schedule C deductions, to which they were not entitled, pertaining to a Christmas tree farm. The Michoff, Srs., never sold any trees from the tree farm. On brief, the Michoff, Srs., contend that they entered the tree farm business with the intent to make a profit. "Petitioner has the burden of proof as to both the deductibility and substantiation of her claimed business

expenses." Rule 142(a); <u>Ronnen v. Commissioner</u>, 90 T.C. 74, 102 (1988). Based upon the lack of any evidence provided by petitioners, and taking into account their stipulations and admissions, we find that they have failed to carry their burden of proof with respect to both the deductibility and the amount of the claimed deductions. Accordingly, we sustain respondent on this issue.

<u>Substantial Understatement Penalty--Michoff, Srs.</u>

Respondent determined additions to tax of $7,339 and $2,112 under section 6661 for the tax years 1986 and 1987, respectively, for the Michoff, Srs. Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return and is substantial if it exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year, or (2) $5,000. Sec. 6661(b)(1) and (2)(A). The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position or (2) has substantial authority for the tax treatment of an item. Sec. 6661; sec. 1.6661-6(a), Income Tax Regs. Petitioners have the burden of proving they are not liable for the addition to tax. Rule 142(a).

The Michoff, Srs., contend that they should not be liable for the substantial understatement penalty because their

understatement for each of the years 1986 and 1987 was minimal. Based on our findings, it is clear that the Michoff, Srs., did substantially understate their Federal income tax. Respondent is sustained to the extent, consistent with this opinion, there is an underpayment attributable to such understatement for each of the years 1986 and 1987.

Unreported Income--Michoff, Jr.

Revenue Agent Anita Russell conducted a bank deposits analysis of the 1986, 1987, 1988, and 1989 tax years of Michoff, Jr. Respondent additionally refers to the United States Bureau of Labor Statistics (BLS) in order to determine petitioner's unreported income for each of the years in issue. Based on this analysis, respondent, after concessions, argues that Michoff, Jr., had unreported income of $39,850, $29,879, $24,422, and 68,798 in the 1986, 1987, 1988, and 1989 tax years, respectively. As a potential source for additional income, respondent argues that Michoff, Jr., had a lucrative business selling drugs. Michoff, Jr., was convicted of a felony in California for possession of drugs for sale.

Deposits were made into the Michaels & Michaels Autobody Shop's (the autobody shop) CapFed account in the amount of $71,544 in the 1986 tax year. Michael Juarez testified that he did not remember making deposits in this amount into the CapFed account for the autobody shop in the 1986 tax year. The autobody shop's CapFed account remained active through October of 1986,

and deposits were made into that account through October of 1986. No records from the autobody shop were ever provided to respondent's revenue agent. Respondent's revenue agent computed the autobody shop's profit as follows: Total receipts of $83,544 consist of the deposits into its bank account of $71,544 and cash expenditure for annual rent which was approximately $12,000. From this total, Ms. Russell subtracted cost of goods sold of 40 percent. Ms. Russell computed that the partnership had a net profit of $35,726. Michoff, Jr., retained a 25-percent interest in the autobody shop through 1986. Ms. Russell therefore determined that the net profit of Michoff, Jr., was $8,932, which was 25 percent of the net profit from the partnership. Neither Michoff, Jr., nor Michael Juarez filed a partnership return for the autobody shop for the 1986 tax year.

Michoff, Jr., made a $10,000 cash down payment on the purchase of property from Mr. and Mrs. Knight (the Knight property) in the 1986 tax year. Michoff, Jr., contends that the source of this payment was a loan from Dan Maggard. However, Michoff, Jr., failed to prove this contention. Michoff, Jr., testified that these funds came from a loan, and he presented a list of loans which he claims to have received from Dan Maggard. This list was recently prepared by Michoff, Jr., in preparation for this litigation. Additionally, it is only signed by Dan Maggard and not Michoff, Jr. Mr. Maggard signed this document at the request of Michoff, Jr. At trial, Mr. Maggard testified that

he did not remember the terms of these loans.  He further testified that he and Michoff, Jr., did not document these loans.  Michoff, Jr., later testified that they did document the various loans.  Furthermore, until 1995, there is no evidence that any of the amounts were ever repaid.  Michoff, Jr., has failed to prove that any of the funds came from loans.

Michoff, Jr., made deposits into his Downey savings account in the amount of $3,334 which is in issue in the 1986 tax year.  This is not the total amount of deposits in this account in the 1986 tax year.  This amount does not include $1,000 that was identified as a transfer.

Michoff, Jr., made a deposit of $3,686 into Kimberly Michoff's Great Western account in the 1986 tax year.  This amount is not the total amount deposited into this account in the 1986 tax year by Michoff, Jr.  Michoff, Jr., conceded on brief that this deposit has not been identified as coming from a nontaxable source.

Michoff, Jr., made deposits into his Pacific Valley Bank account in the amount of $220 in the 1986 tax year.

In the 1987 tax year, Michoff, Jr., made payments to the Knights in the amount of $76,195 toward the purchase of the Knight property.  Of this amount, respondent contends that $15,682 cannot be traced to previously taxed or nontaxable sources.  Of the $15,682, Michoff, Jr., admits that $622 is from unknown sources.

Michoff, Jr., did not file an income tax return for the 1986 or 1987 tax year.

In the 1988 tax year, Michoff, Jr., made payments of $6,000 toward the purchase of the Knight property.

Michoff, Jr., made deposits in the amount of $3,500 in his World Savings Bank account in the 1988 tax year. These amounts are not the total amount of deposits to this account in the 1988 tax year.

Michoff, Jr., reported total income for the 1988 tax year in the amount of $10,135.

Michoff, Jr., and Kimberly Michoff expended the following amounts in the 1989 tax year on the Green Ridge residence: $900 as a deposit; $29,500; and $8,797.[6] The total amount of $39,197[7] was spent by Michoff, Jr., and Kimberly Michoff on the Green Ridge residence in the 1989 tax year.[8]

---

[6] The $8,797 is the same amount that the Dickersons expended on a cashier's check in the same year to purchase the Green Ridge residence. Petitioners do not argue that this is a duplication, and, without evidence to so indicate, we do not assume that it is.

[7] On brief, petitioner argues that "There was no proof offered that Michael Michoff, Jr., had $39,197 in funds for the Green Ridge property purchase." We find the parties' stipulation to this fact to be sufficient proof that this amount was expended by Michoff, Jr., and Kimberly Michoff.

[8] The stipulation reached by the parties states that the funds were expended by Michoff, Jr., and Kimberly Michoff. The deficiency for the 1989 tax year was asserted only against the income tax of Michoff, Jr., however, because of the deemed concession discussed below we do not inquire into what portion of the funds were expended by Kimberly Michoff.

Michoff, Jr., made deposits to his World Savings Bank accounts of $5,207 which is in issue in the 1989 tax year. These are not the total amount of deposits made into these accounts in the 1989 tax year.

Respondent contends that the source of the $39,197 in payments and the $5,207 in deposits has not been identified by petitioners. In response to respondent's proposed findings of fact on these issues, Michoff, Jr., states: "Objection. $5,207.00 receipts from limousine business reported on Petitioner's Schedule 'C' and included in $6,000 gross receipts." Because this is the only objection to respondent's proposed findings of fact regarding those amounts, we consider the $39,197 expenditure to have been conceded to be unreported income.[9] Additionally, Michoff, Jr., provided no evidence that the $5,207 came from previously taxed income.

Michoff, Jr., made deposits into his Placer savings account in the amount of $1,528 which is in issue in the 1989 tax year. This amount is not the total amount deposited into this account in the 1989 tax year. Of this amount, Michoff, Jr., contends that $1,098 came from Kimberly Michoff's salary. The only proof of this source is the vague, unsubstantiated testimony of Michoff, Jr. Michoff, Jr., contends that most of the remaining

---

[9] We rely extensively on petitioners' responses to respondent's proposed findings of fact. On brief, petitioners state: "Petitioners have extensively explained their 'unreported income' in the Objection to Respondent's Requested Findings of Fact and, therefore, it is unnecessary to repeat them here."

amounts came from a refund, his salary, or a gift. The only proof of these amounts is, again, his vague, unsubstantiated testimony. Furthermore, for $13 Michoff, Jr., offers no source but contends that it is not taxable income.

Michoff, Jr., and Kimberly Michoff lived together during 1986, 1987, 1988, and 1989. Pursuant to the BLS, the personal living expenditures, excluding housing, for a couple in 1986, 1987, and 1988 would be $13,678, $14,197, $14,922, respectively. Pursuant to the BLS, the personal living expenditures for a couple in 1989 would be $24,549. In her notice of deficiency, respondent used the BLS to reconstruct petitioner's income. This Court and other courts have approved the use of those statistics as an acceptable and reasonable method of reconstructing income. E.g., Pollard v. Commissioner, 786 F.2d 1063, 1066 (11th Cir. 1986), affg. T.C. Memo. 1984-536; Giddio v. Commissioner, 54 T.C. 1530, 1532-1533 (1970).

Michoff, Jr., contends that he should not be charged with personal living expenses for 1986 because he was residing with his grandparents and they were providing his room and board. Additionally, he contends that any incidental expenses he had were covered by amounts he received from loans, gifts, and repayments by Michael Juarez. In her determination, respondent used BLS statistics that excluded housing for 1986 as well as for 1987 and 1988. Michoff, Jr., has not established that he did not

have personal expenditures or that the amounts paid for personal expenditures came from nontaxable sources.

Michoff, Jr., has the burden of proving that respondent's determinations are in error. Rule 142(a). He has failed to meet this burden with regard to any of the amounts determined to be unreported income. Respondent is sustained on this issue.

Unreported Income--Michoff,Jr., and Kimberly Michoff

Michoff, Jr., and Kimberly Michoff filed a joint Federal income tax return for the 1990 tax year.

Respondent's revenue agent conducted a bank deposits analysis of the 1990 tax year of Michoff, Jr., and Kimberly Michoff. Based on this analysis, respondent, after concessions, argues on brief that Michoff, Jr., and Kimberly Michoff had unreported income of $22,649 in the 1990 tax year. Petitioners concede the deposits in 1990 but claim that they were transfers from accounts, loans, and gifts and that some of the amounts were duplicated by the revenue agent and counted more than once.

The amount that Michoff, Jr., and Kimberly Michoff spent on personal expenditures by check was subtracted from the bank deposits total. Michoff, Jr., and Kimberly Michoff made deposits into their First Interstate Bank account in the amount of $3,187 which is in issue in the 1990 tax year. This amount is not the total amount of deposits into this account in the 1990 tax year.

The Michoff, Jrs., made deposits into their Placer Savings Bank accounts in the amount of $18,892 in the 1990 tax year.

Petitioners argue that many of these deposits came from their wages, which were reported on their individual income tax return.  However, they have offered no proof of this beyond vague, unsubstantiated testimony.  Additionally, respondent's revenue agent backed out net income that was reported on petitioners' return when she performed her bank deposits analysis.

Michoff, Jr., contends that a $3,000 deposit which is in issue came from the sale of a Porsche to Bill McKay.  Michoff, Jr., contends that he purchased the Porsche for $2,000 and put $1,000 worth of repairs into the car.  Other than his own testimony, which we find lacking in credibility, Michoff, Jr., presented three exhibits as proof of his purchase price and cost of repairs; these exhibits lack any probative value as well as any indicia of trustworthiness.[10]

---

[10] As proof of his purchase price Michoff, Jr., submitted two exhibits to the Court.  First, Michoff, Jr., submitted a document from the State Board of Equalization Occasional Sales Use Tax Unit.  This document is a letter which states that Michoff, Jr.'s, Certificate of Purchase Price, indicating his purchase price of the car, was selected for routine verification and that he would need to submit other evidence providing verification of value.  This document proves nothing as it is merely a request for information.  Second, Michoff, Jr., submitted a bill of sale purportedly showing that he purchased a Porsche for $2,000.  However, this bill of sale lacks a Vehicle Identification Number, a transfer date, and the address of the seller.  There is no indication that this is an actual bill of sale.

As proof of the cost of repairs, Michoff, Jr., submitted a pile of receipts.  These receipts do not show for what car the parts were ordered or the work done.  Additionally, Michoff, Jr., included receipts dated as late as May 28, 1991, for a car which

(continued...)

We have considered petitioners' arguments regarding all other deposits that are in dispute and consider them to be without merit.  Petitioners have failed to carry their burden of proving a nontaxable source with respect to the disputed deposits and expenditures.  Therefore we hold that respondent is sustained on this issue.

## Capital Gains from the Sale of a Partnership Interest in 1986

Prior to the years in issue, Michoff, Jr., had a 50-percent partnership interest in Michaels & Michaels Autobody Shop (the autobody shop).  At the beginning of 1986, Michoff, Jr., disposed of half of his partnership interest in the autobody shop, retaining a 25-percent interest.  The parties stipulated that the amount of capital gain from that disposition was $30,644.  Respondent determined that Michoff, Jr., failed to report this gain.

Despite these stipulations, Michoff, Jr., argues that he had no gain from the sale of his partnership interest.  Michoff, Jr., offered no documentary evidence to disprove respondent's determinations and chose instead to rely on unsubstantiated claims on brief.  Michoff, Jr., has failed to meet his burden of proof.  We therefore sustain respondent on this issue.

## Limousine Activity

In her notice of deficiency, respondent disallowed Schedule C deductions claimed by Michoff, Jr., on his 1989 income tax return

---

[10](...continued)
he claims to have sold on or prior to Mar. 26, 1990.

with regard to an alleged limousine service. Respondent's determinations carry the presumption of correctness. Michoff, Jr., must establish that he is entitled to the claimed deductions. Rule 142(a). Deductions are a matter of legislative grace; petitioner has the burden of showing that he is entitled to any deduction claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Michoff, Jr., attempts to meet his burden of proof through his own testimony as well as various receipts. On brief, Michoff, Jr., had no objection to the following proposed findings of fact by respondent relating to the receipts:

The receipts are deficient as follows:

a. The copy of the receipt in the amount of $405.61 does not indicate what it's for, or who issued it, or when it was made.

b. A receipt in the amount of $18.18 is for the 1988 tax year.

c. A receipt in the amount of $49.19 is for the 1990 tax year.

d. A receipt in the amount of $4.91 is for the 1991 tax year.

e. The All Parts Auto Store receipts, B&M Automotive Parts receipts, Carl Chevrolet receipts, Kragen Auto receipts, Checker Schuck's Kragen receipt, 49er Auto Parts invoice, Color-rite Paint Co. invoice, C&H Paint & Equipment Supply invoice, and Carl Chevrolet invoice do not indicate whether they are for a limousine activity or for some other use, such as personal use.

f. Many of these items are invoices and do not indicate that payments were made.

g. The Swift Dodge document statement for $250.00 is an invoice and not a receipt.

h.  The Central Valley Towing document is duplicated several times.  The insurance application is duplicated several times.  The check made out to Gilbert Insurance is duplicated several times.  The Swift Dodge document is duplicated several times.

Michoff, Jr., has offered no evidence that the claimed deductions were ordinary and necessary to a trade or business. The receipts offered do not indicate that they were incurred with regard to the limousine activity of Michoff, Jr., or with regard to any business activity.  Additionally, many of the receipts offered to substantiate the claimed deductions were duplicated and were for tax years not subject to this issue.  Michoff, Jr., has failed to substantiate most of his claimed deductions, and he has failed to establish that any of the claimed deductions were for expenses ordinary and necessary to a trade or business. Accordingly, respondent's determination regarding this issue is sustained.

## Failure To Timely File Federal Income Tax Returns

Respondent contends that Michoff, Jr., is liable for the addition to tax for failure to timely file for the 1986 and 1987 tax years.  Michoff, Jr., contends that he had less than $3,000 of income for each of those years and thus was not required to file a return.  It is undisputed that Michoff, Jr., failed to file an income tax return for the 1986 and 1987 tax years.

Section 6651(a) provides an addition to tax for failure to timely file an income tax return by the prescribed due date unless the taxpayer can establish that such failure was due to reasonable cause and not willful neglect.  Although reasonable

cause is not defined in the Code, the regulations state: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect has been defined as a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).

In the instant case regarding Michoff, Jr., we have found that he did have income sufficient to require the filing of a return in both the 1986 and 1987 tax years. The unverified belief of Michoff, Jr., that he had no taxes owing does not constitute reasonable cause of the sort that will allow him to escape the addition to tax under section 6651(a)(1). See Olsen v. Commissioner, T.C. Memo. 1993-432. We sustain respondent on this issue.

Failure To Pay Estimated Tax

Respondent determined an addition to tax for failure to pay estimated tax for the 1986 and 1987 tax years for Michoff, Jr. Section 6654 imposes an addition to tax for failure to pay estimated income tax. Michoff, Jr., contends that he did not have sufficient income in 1986 or 1987 to require him to pay estimated taxes. Michoff, Jr., bears the burden of proving that he is not liable for this penalty. Rule 142(a). Michoff, Jr., contends that he had a loss carryover from his business in 1985 and, thus, did not have sufficient income in 1986 or 1987 to require him to pay estimated taxes. Michoff, Jr., offered no

proof regarding his entitlement to such a loss carryforward nor that such a loss would have reduced his income such that he would not be required to pay estimated taxes. Once again he makes conclusory and unsupported arguments that fail to support his burden of proof. Respondent is sustained on this issue.

Substantial Understatement Penalty--Michoff, Jr.

Respondent determined an addition to tax of $2,095 under section 6661 for the tax year 1988 for Michoff, Jr. Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return and is substantial if it exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year, or (2) $5,000. Sec. 6661(b)(1) and (2)(A). The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position or (2) has substantial authority for the tax treatment of an item. Sec. 6661; sec. 1.6661-6(a), Income Tax Regs. Petitioner has the burden of proving he is not liable for the addition to tax. Rule 142(a).

The only argument of Michoff, Jr., is that he is not liable for understating his taxes in 1988 and, thus, should not be charged with the substantial understatement addition to tax. Based on our findings in this case, there was a substantial understatement, and, thus, respondent's determination is sustained.

Additions to Tax for Negligence and Accuracy-related Penalty

Respondent determined that all petitioners in these cases are liable for additions to tax or accuracy-related penalties for negligence for the years in which they had underpayments. Different sections apply to the various years in issue. Secs. 6653(a)(1)(A) and (B) (for 1986 and 1987), 6653(a)(1) (for 1988), 6662(a) (for 1989 and 1990). Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947-948 (1985). Petitioners bear the burden of proving that respondent's determinations are erroneous. Rule 142(a).

The Dickersons claim that they should not be liable for the negligence penalty because they are entitled to the deductions they claimed or because their unreported rental income was offset by expenses. This is essentially arguing that they are not liable for the negligence penalty because they did not underpay their tax. We have already found that they did underpay their tax. Respondent is sustained with respect to the negligence penalty resulting from underpayments by the Dickersons.

The Michoff, Srs., "admit they unintentionally omitted items from their tax return due to inadvertence and lack of knowledge" but contend that they should not be burdened with additions to tax for negligence or the accuracy-related penalty. The Michoff, Srs., have failed to offer any proof that they were not negligent in their underpayment. Respondent is sustained with respect to

the additions to tax and the negligence penalty resulting from underpayments by the Michoff, Srs.

For the taxable years 1986, 1987, and 1988, the contention of Michoff, Jr., that he is not liable for additions to tax for negligence consists of one sentence:  "Michael Michoff, Jr., is not liable for the penalties due under IRC [sections] 6653(A)(1)(a) and 6653(A)(1)(b) because he was not guilty of negligence or disregard of rules or regulations."  This contention is not an argument; it is a conclusion.  Respondent is sustained on this issue.

Michoff, Jr., presented no argument that he is not liable for the negligence penalty for the 1989 tax year.  The burden rests with petitioner to prove that respondent's deteminations are in error.  Rule 142(a).  We cannot be sure that petitioner intended to abandon the issue, but in any case respondent's determination of the applicable penalty resulting from the underpayment of tax must be sustained with respect to the 1989 tax year of Michoff, Jr.

For the 1990 tax year Michoff, Jr., and Kimberly Michoff argue that they are not liable for the accuracy-related penalty because they have accounted for all of the deposits which were questioned by the revenue agent.  As we have already found, they did not.  Respondent is sustained on this issue.

We have considered all arguments by petitioners and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be</u>

<u>entered under Rule 155</u>.